# United States Court of Appeals
## For the First Circuit

_____

Nos. 01-1912
     01-2531

UNITED STATES OF AMERICA,

Appellee,

v.

WILLIAM RANNEY, SR.

Defendant, Appellant.

_____

No. 01-1913

UNITED STATES OF AMERICA,

Appellee,

v.

DENNIS CIOFFI,

Defendant, Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, Senior U.S. District Judge]

_____

                           Before

           Torruella and Lipez, <u>Circuit Judges</u>,

           and Schwarzer,<sup>*</sup> <u>Senior District Judge</u>.

                    _____

        <u>Miriam Conrad</u>, with whom <u>Terrance J. McCarthy</u> was on briefs,
for appellants.
        <u>Joshua S. Levy</u>, Assistant United States Attorney, with whom
<u>Michael J. Sullivan</u>, United States Attorney, was on brief for
appellee.

                    _____

                      August 1, 2002

                    _____

        <sup>*</sup>The Honorable William W Schwarzer, Senior United States
District Judge for the Northern District of California, sitting by
designation.

**SCHWARZER, Senior District Judge**:   Defendants William Ranney, Sr. ("Ranney") and Dennis Cioffi ("Cioffi") (collectively, "defendants") were named in a twenty-five-count indictment charging conspiracy to commit mail and wire fraud, along with several substantive counts of mail and wire fraud.  Following a jury trial, Ranney was convicted of conspiracy in violation of 18 U.S.C. § 371, four counts of wire fraud in violation 18 U.S.C. § 1343, and one count of mail fraud in violation of 18 U.S.C. § 1341.  Cioffi was convicted of one conspiracy count and two wire fraud counts.

On appeal, defendants press four contentions, the first by both defendants and the others by Ranney alone.  First, defendants challenge the court's denial of their motion for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).  Second, Ranney contends that the court's jury instructions improperly lessened the government's burden of proof.  Third, Ranney argues that the court committed clear error in calculating the loss attributable to the fraud.  Fourth, Ranney challenges the district court's denial of his motion to correct the judgment under Rule 36.

## PROCEDURAL BACKGROUND

On December 17, 1998, a magistrate judge signed a search warrant authorizing the search of the premises occupied by Big Top Gumball, a company engaged in the marketing of the "Big Top" gumball vending machine.  In support of its search warrant

application, the government submitted a thirty-page affidavit by F.B.I. agent Geoffrey Kelly, detailing how Big Top had defrauded twelve customers. Pursuant to this warrant, the government seized several boxes of business records, including promotional materials, telephone sales scripts, customer files, invoices, customer waiting lists, a customer "temperature" list (indicating a customer's degree of irritation), and related records. This evidence was eventually received at defendants' trial.

On July 14, 2000, defendants moved for a Franks hearing, alleging that the government had intentionally misled the magistrate judge in seeking this warrant. On December 1, 2000, the court held a hearing on the Franks motion. Defendants argued that the affidavit wrongly implied that Quick Silver Development Corporation ("Quick Silver"), the manufacturer of the machines, held a patent on an essential element of the machine and that it failed to disclose bias on the part of Greg Malavazos, a Quick Silver employee. When the court inquired further, the government acknowledged that it had taken no steps to confirm the patent's existence.

On December 4, 2000, the court denied the motion, and the government filed a report stating that it had discovered that Quick Silver did not own the patent at issue. The court then denied defendants' motion for reconsideration.

After a thirteen-day trial, defendants were convicted on

all counts. The court sentenced Ranney to fifty-seven months' imprisonment and three years' supervised release and ordered him to pay restitution of $407,647. It sentenced Cioffi to twenty-four months' imprisonment and three years' supervised release and ordered restitution of $309,090.

Following entry of judgment Ranney filed a Rule 36 motion to amend the judgment to deduct losses incurred before the inception of the conspiracy and by one customer who had received an incomplete machine. The amendment would have reduced Ranney's Guideline range from 57-71 months to 51-63 months. The court denied the motion.

Defendants now appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and affirm.

## FACTUAL BACKGROUND

Defendants were convicted of running a telemarketing fraud operation using their company, Big Top Gumball ("Big Top"). In April 1996, Big Top contracted with Quick Silver to manufacture vending machines. By the time Quick Silver began full-scale production in September 1996, Big Top had approximately 200 unfilled orders. Quick Silver manufactured roughly 250 machines before halting production in December 1996. In February 1997, when Quick Silver canceled its contract, Big Top found itself without a manufacturer. Nonetheless, Big Top continued to market its product, soliciting new orders and promising delivery within six to

eight weeks.  By July 1997, Big Top owed 175 machines to more than 60 customers who had already paid deposits.  Twenty-one customers on this list had paid in full, but had not received their machines. Big Top continued to solicit new orders until the end of 1998 despite never having secured new production capacity.

The Kelly affidavit, apart from chronicling the activities of the defendants' scheme, related the experiences of eighteen of Big Top's customers who had paid 50-100% of the purchase price but never received delivery despite Big Top's repeated promises of imminent delivery.  The affidavit also contained information regarding Big Top's lack of access to production capacity and Quick Silver's alleged patent on certain parts.  Specifically, paragraphs 14 and 21 of the affidavit contained the following information:

> [Malavazos] advised me that Big Top lacks the patented computer hardware necessary to manufacture [the] machines themselves.  Thus, for nearly two years, even though it has not purchased any machines from its supplier and it does not apparently have the capability to manufacture these gumball machines on its own, Big Top has solicited orders and accepted money based, in part, on the representation of guaranteed delivery within six to eight weeks. . . . The only way that Big Top could manufacture such a machine themselves would be if [it was] able to secure another manufacturer for these computer electronics board [sic], which have been patented by Quick Silver.

**DISCUSSION**

## I.  DENIAL OF <u>FRANKS</u> MOTION

We review the court's denial of the <u>Franks</u> hearing for clear error.  <u>United States</u> v. <u>Grant</u>, 218 F.3d 72, 76 (1st Cir. 2000).

A <u>Franks</u> hearing is warranted where the defendant makes a "substantial preliminary showing" that (1) a false statement,(2) knowingly and intentionally, or with reckless disregard for the truth, was included in the warrant affidavit, and (3) the allegedly false statement is necessary to the finding of probable cause. <u>Franks</u>, 438 U.S. at 155-56.  As the government conceded below, the affidavit contained a factual error; Quick Silver in fact held no patents to parts of the machines so as to preclude Big Top's securing another manufacturer.  Because defendants do not allege the statement to have been made with actual knowledge of its falsity, we consider only whether it was made with reckless disregard for the truth and, if it was, whether it was necessary to the finding of probable cause.

### A.  Reckless Disregard for the Truth

To prove reckless disregard for the truth, the defendant must prove that the affiant "in fact entertained serious doubts as to the truth" of the allegations. <u>United States</u> v. <u>Williams</u>, 737 F.2d 594, 602 (7th Cir. 1984) (internal quotations omitted) (agreeing with  <u>United States</u> v. <u>Davis</u>, 617 F.2d 677, 694 (D.C.

Cir. 1979) holding that the First Amendment definition should be applied by analogy in the Franks setting); see also Beard v. City of Northglenn, 24 F.3d 110, 116 (10th Cir. 1994) (same). Recklessness may be inferred "from circumstances evincing obvious reasons to doubt the veracity of the allegations." Williams, 737 F.2d at 602 (internal quotations omitted).

Defendants' principal contention is that Kelly should have checked whether Quick Silver actually had the patent Malavazos claimed it had. Although Kelly could have made such an investigation, defendants have shown no circumstances indicating that he had reason to doubt the patent's existence. Under the circumstances, his failure to probe further does not amount to reckless disregard. United States v. Dale, 991 F.2d 819, 844 (D.C. Cir. 1993) ("failure to investigate fully is not evidence of an affiant's reckless disregard for the truth.").

Defendants also argue that Kelly should have entertained serious doubts as to Malavazos's credibility because he had provided different estimates of Big Top's debt to Quick Silver in three interviews. We agree with the government that these discrepancies are tangential, and that Kelly rightly focused on Malavazos's chief assertion, that Big Top had no production capacity to manufacture machines after February 1997, constituting the heart of the fraud. This assertion was corroborated by information Kelly obtained from Big Top customers who had purchased

machines after February 1997, but had never received them.

**B.  Probable Cause**

Even had defendants been able to clear the reckless disregard hurdle, they failed to make the requisite substantial preliminary showing that absent the false information the affidavit contained insufficient evidence to support a finding of probable cause.  Franks, 438 U.S. at 171-72.

They contend that in the absence of the false patent ownership statement, the allegations in the affidavit of Big Top's conduct amounted to no more than "poor customer service" or "puffing" regarding anticipated delivery time, not sufficient to support a probable cause finding of mail fraud.  But these statements, far from being mere opinion or puffing, were specific factual representations about product shipment schedules.

Moreover, the undisputed portions of the affidavit establish probable cause that Big Top was engaged in fraud in 1997 and 1998.  By the close of 1996, Quick Silver had ceased manufacturing and Big Top owed forty machines to customers who had paid in full.  By February 1997, Big Top had an extensive waiting list of customers who had paid for machines that did not exist, were not scheduled to be manufactured, and could not be manufactured given Big Top's complete lack of production capacity. Nonetheless, over the next twenty-two months, Big Top continued to actively solicit new orders and obtain deposits from customers,

-9-

promising delivery in six to eight weeks.  Furthermore, twenty-one individuals had filed complaints with the Massachusetts Attorney General alleging fraud, and thirty-two complaints had been filed with the Federal Trade Commission.  The affidavit also described Big Top bank records corroborating individuals' assertions and suggesting improper activity (such as large cash withdrawals).  In sum, the detailed customer complaints, Malavazos's other statements, and the bank records, taken together, support a finding of probable cause.  The false statement regarding the patent was unnecessary to this finding.  Therefore, the district court properly denied the defendants' motion for a <u>Franks</u> hearing.

## II.  JURY INSTRUCTIONS

Ranney contends that the court gave improper and confusing instructions regarding reasonable doubt.  The jury instructions at issue read as follows:

> It may be that the evidence is susceptible to one of two interpretations, <u>one favoring guilt, one favoring non-guilt</u>.  If that is the case, a defendant is entitled to the benefit of the interpretation that favors not guilty. . . . [A] defendant is never to be convicted on <u>mere suspicion or conjecture</u>.  The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. . . . If the jury . . . has a reasonable doubt that a defendant is guilty of the charge, it must acquit.

> If the jury views the evidence in the case as reasonably permitting either of two conclusions, <u>one of guilt, the other of non-guilt</u>, the jury must, of course, adopt the conclusion of non-guilt. . . . [U]nless the government proves beyond a reasonable doubt

-10-

that a defendant has committed each and every essential element of the offense with which he is charged, you must find him not guilty.

(Emphasis added.)

Ranney having objected below, our review is for abuse of discretion "to determine whether the instructions adequately explained the law or whether they tended to confuse or mislead the jury on the controlling issues." United States v. DeLuca, 137 F.3d 24, 37 (1st Cir. 1998) (quoting United States v. Alzanki, 54 F.3d 994, 1001 (1st Cir. 1995) (internal quotations omitted)). "When the asserted deficiency implicates the government's burden of proof, we inquire whether there is a 'reasonable likelihood' that the jury understood the appropriate standard (viz., proof beyond a reasonable doubt)." Id.

Ranney argues that the use of instructional language equating guilt and *innocence* has been criticized as undercutting the government's burden and sounding too much like a preponderance standard. See United States v. Andujar, 49 F.3d 16, 24 (1st Cir. 1995) (admonishing that "district courts should refrain wherever possible form using a 'guilt or innocence' comparison in their jury instructions."). Because here the court referred to guilt and *non-guilt*, rather than innocence, a term less susceptible to a lay response, we find the instruction less troublesome. Nevertheless, telling jurors that the question is one of guilt or non-guilt, without more, could risk undercutting the government's burden by

-11-

suggesting that the defendant is guilty if they do not think he is not guilty. Cf., id. (warning against the use of guilty or innocent). See also United States v. Guerrero, 114 F.3d 332 , 344 (1st Cir. 1997), and United States v. Inserra, 34 F.3d 83, 90 (2d Cir. 1994), both involving guilt/innocence instructions. But even given the use of an inappropriate "tie breaker" instruction, we will affirm if in the light of the entire jury charge there was no "reasonable likelihood" that the jury misunderstood the government's burden. Victor v. Nebraska, 511 U.S. 1, 6 (1994). Here, the court repeated its instruction that the government was required to prove guilt "beyond a reasonable doubt" on some twenty-three occasions, it reiterated the instruction seven times in responding to jury questions, it complemented its tie-breaker instruction with a reasonable doubt instruction, and it did not use the questionable guilt/innocence language. There being no reasonable likelihood that the jury failed to understand the government's burden as proof beyond a reasonable doubt, we find no abuse of discretion.

## III. CALCULATION OF LOSS ATTRIBUTABLE TO RANNEY

The district court found Ranney to be responsible for a loss of between $350,000 and $500,000. It determined the loss by adding the amounts paid by each Big Top customer during the conspiracy period for machines never received. The calculation was supported by the trial testimony of Big Top customers, victim

-12-

impact statements, the Presentence Investigation Report ("PSR") and Agent Kelly's sentencing affidavit. It did not include sums paid by victims the government had not contacted.

Ranney contends in essence that the evidence supporting the court's calculation was insufficient. He argues that because the company started as a legitimate business, the district court was required to make a determination whether defendants' conduct with regard to the disputed loss was actually criminal conduct. But there was evidence from which the court could find that all Big Top customers who did not receive the machines they paid for during the conspiracy period were victims of defendants' common scheme and plan. This was evident from the trial testimony that Big Top representatives followed a similar sales pitch using scripts issued to them by Ranney, gave a money-back guarantee, and promised delivery within six to eight weeks. Ranney offered no testimony disputing that of customers or suggesting that any loss occurred under different circumstances. United States v. Grant, 114 F.3d 323, 328 (1st Cir. 1997) (finding that "the court was justified in relying on the contested facts" in the PSR where the defendant did not "provide the sentencing court with evidence to rebut the factual assertions" in dispute).

We review the district court's interpretation and application of the sentencing guidelines de novo and its factual findings for clear error. United States v. Skrodzki, 9 F.3d 198,

203 (1st Cir. 1993). A defendant "dissatisfied with the sentencing court's quantification of the amount of loss in a particular case must go a long way to demonstrate that the finding is clearly erroneous." United States v. Rostoff, 53 F.3d 398, 407 (1st Cir. 1995). The district court's findings as to factual matters need only be "supported by a preponderance of the evidence." United States v. Ovalle-Marquez, 36 F.3d 212, 221-22 (1st Cir. 1994).

In determining the sentence, the district court may include as relevant conduct "the same course of conduct or common scheme or plan as" the underlying offense. Skrodzki, 9 F.3d at 201 (quoting U.S. SENTENCING GUIDELINES MANUAL § 1B1.3(a)(2) (2000)). To constitute a "common scheme or plan," multiple offenses "must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S. SENTENCING GUIDELINES MANUAL § 1B1.3, cmt. 9. In engaging in this analysis, the district court may rely on the PSR, affidavits, documentary exhibits, and submissions of counsel. Skrodzki, 9 F.3d at 201.

"[T]he loss [calculation] need not be precise"; the court simply needs to "make a reasonable estimate of the range of loss, given the available information." U.S. SENTENCING GUIDELINES MANUAL § 2F1.1, cmt. 8; Rostoff, 53 F.3d at 407 ("[Loss calculation] is more an art than a science. Courts can, and frequently do, deal with rough estimates."). Loss calculations "may be based on the

-14-

approximate number of victims and an estimate of the average loss to each victim."  U.S. SENTENCING GUIDELINES MANUAL § 2F1.1, cmt. 9.

The PSR recommended a loss range of $500,000-850,000. The government set the loss at $410,000, including only sales that occurred during the charged conspiracy and excluding intended loss for attempted sales and back-end frauds as well as losses by victims it had not contacted.  (After judgment, the government moved to amend the judgment to remove two victims it had not contacted and add one it had.)  We find no clear error.[1]

## IV.  DENIAL OF MOTION TO CORRECT THE JUDGMENT UNDER RULE 36

Ranney's final contention is that the district court erred when it denied his Rule 36 motion to correct the judgment by revising the loss calculation so as to reduce his sentencing range. Rule 36 permits the district court to correct only "[c]lerical mistakes" and "errors in the record arising from oversight or omission" despite the district court's divestment of jurisdiction once the notice of appeal has been entered.  FED. R. CRIM. P. 36. The Rule applies to straightforward clerical and technical errors; it is not meant to provide an opening for litigation over the merits and is therefore "generally inapplicable to judicial errors and omissions."  United States v. Fahm, 13 F.3d 447, 454 n.8 (1st

---

[1]Ranney also contends that the district court failed to make findings on certain factual disputes in violation of Federal Rule of Criminal Procedure 32(c).  Having failed to raise the issue below, Ranney has waived it.

-15-

Cir. 1994) (internal quotations and citations omitted).  Because Ranney's motion fell outside the scope of Rule 36, it was properly denied.

**<u>Affirmed</u>**.