# United States Court of Appeals
## For the First Circuit

No. 14-1174

UNITED STATES OF AMERICA,

Appellee,

v.

JONATHAN TANGUAY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph N. Laplante, U.S. District Judge]

Before

Barron, Selya and Stahl,
Circuit Judges.

J. Martin Richey, Federal Defender Office, for appellant.
Seth R. Aframe, Assistant United States Attorney, with whom
John P. Kacavas, United States Attorney, was on brief, for
appellee.

May 22, 2015

**SELYA, Circuit Judge.** It is common ground that a police officer seeking to obtain a search warrant should include in the affidavit accompanying the warrant application any facts known to her that are material to the existence vel non of probable cause. See United States v. Stewart, 337 F.3d 103, 107 (1st Cir.), as amended (Oct. 14, 2003). Under some limited circumstances, however, the officer's duty may be broader: she may be obliged to inquire further in order to dispel serious doubts about either the credibility of an informant upon whom she relies or the veracity of the allegations underlying the attempted showing of probable cause. This duty of further inquiry is not well understood, and the court below ruled categorically that no such duty ever exists. Because this statement of the law is insufficiently nuanced, we remand for further factfinding consistent with this opinion.

## I.  BACKGROUND

We briefly rehearse the facts as supportably found by the district court, along with the travel of the case. The reader who hungers for more exegetic detail may wish to consult the district court's comprehensive account. See United States v. Tanquay, 907 F. Supp. 2d 165, 167-76 (D.N.H. 2012).

In February of 2010, the Conway police department received an e-mail, ostensibly from "Jim Garrold," relating that he had seen child pornography on the laptop computer of "John Tanguway." The e-mail described "Tanguway" as an emergency medical

technician with a local ambulance service and indicated that the child pornography had been observed during a sexual encounter a few days earlier. This e-mail served to draw the attention of the police to defendant-appellant Jonathan Tanguay, a selectman in the nearby town of Bartlett.

A New Hampshire state trooper, Sgt. Carrie Nolet, took charge of the ensuing investigation. After searching without success for a Jim Garrold, Nolet called the telephone number provided in the e-mail. A voicemail message identified the owner of the telephone as Josh Wiggin. Nolet then asked Sgt. Alan Broyer, a Conway police officer, whether he knew anyone by that name. Broyer responded that Wiggin was known as a "police groupie" who was "quirky," "troubled" in his teen years, and had a history of suicidal ideation. Broyer also commented that Wiggin had experienced "a few scrapes" with the law, specifically mentioning that Wiggin had been convicted of uttering a false prescription (he had altered the number of Vicodin pills on a legitimate prescription from 30 to 80 before presenting the prescription to a pharmacist). Nolet did not ask Broyer for more details nor did she make any effort to find out what other "scrapes" Wiggin may have had.

Nolet proceeded to contact Wiggin (a 28-year-old Conway resident). He admitted having sent the accusatory e-mail and agreed to an interview. During this interview, Wiggin disclosed

that he and the appellant had maintained a casual sexual relationship, off and on, since Wiggin's teenage years. He added that, on a recent evening, he had gone to the appellant's home for that purpose. When he walked in, the appellant was watching a pornographic video on his laptop. Wiggin described the subjects of this video as boys of "maybe eight, thirteen, fifteen, sixteen."[1] He also reported seeing thumbnail previews of a "bunch of pictures" and three or four videos depicting children engaging in sex acts with adults.

About a week after the interview, Nolet applied for and obtained a warrant to search the appellant's home, vehicle, and workplace for computer systems. In the affidavit supporting the warrant application, Nolet communicated the substance of Wiggin's interview, emphasizing that Wiggin had come forward despite the potential embarrassment of having his sexual interest in men revealed to his parents and girlfriend. The affidavit did not contain any of the information that Nolet had learned from Broyer regarding Wiggin's history and reputation. Nor did she incorporate the typewritten notes that Wiggin had prepared and brought to the interview. See supra note 1.

---

[1] Wiggin had prepared typewritten notes in advance of the interview and brought those notes with him. The notes indicated that the video depicted "young man or teen pornography." Nolet retained Wiggin's notes after the interview ended.

A state judge issued the warrant. During the search, the police seized a computer, hard drive, and compact disc that were found to contain a profusion of sexually explicit images and videos depicting minors.

A federal indictment followed charging the appellant with a single count of possession of child pornography. See 18 U.S.C. § 2252A(a)(5)(B). The appellant moved for an evidentiary hearing, see Franks v. Delaware, 438 U.S. 154, 155-56 (1978), and to suppress the evidence seized during the search. He asserted that Nolet had either deliberately or recklessly omitted material information from her affidavit.

The district court convened what amounted to a Franks hearing at which Nolet testified. The court reserved decision and subsequently filed a written rescript denying the motion to suppress. The court concluded that Nolet had "recklessly — if not intentionally —" omitted from her affidavit three clusters of relevant information known to her at the time she sought the warrant: Wiggin's prior conviction for falsifying a prescription, a crime of dishonesty; Wiggin's reputation among local police as "troubled," "suicidal," "quirky," and a "police groupie," which the district court said suggested a history of mental instability and a willingness to compromise oneself to impress the police; and the fact that Wiggin's interview statement — that the appellant was viewing a pornographic video depicting children as young as eight

-5-

years of age when Wiggin arrived — arguably conflicted with Wiggin's typed notes describing the subjects of that video as young men or teens. Tanguay, 907 F. Supp. 2d at 177-79. But these three clusters of omitted information, the court held, did not require suppression: there would have been probable cause to authorize the search even if the affidavit had included the omitted facts. See id. at 186.

The appellant had a fallback position: he argued that Nolet's affidavit was deficient because she had neglected to make any inquiry into the concerns voiced to her by Broyer. Had such an inquiry been mounted, Nolet conceivably would have discovered that one of Wiggin's prior "scrapes" was a juvenile conviction for making a false report to the Conway police. That conviction stemmed from Wiggin's claim that he had been shot in the leg by an unidentified sniper when, in fact, he had shot himself to see what it felt like. Because such a conviction was for a crime of dishonesty, the appellant asserted, disclosing it would have cast grave doubt on Wiggin's credibility and, thus, undermined any showing of probable cause.

The district court rejected this plaint as well. In doing so, the court relied on the fact that Nolet did not know of the false report conviction at the time she executed the affidavit. See id. at 182. Since Nolet had no duty as a matter of law to

inquire further, the court reasoned, the false report conviction formed no part of the Franks calculus. See id. at 182-83.

In due course, a jury convicted the appellant. The district court sentenced him to an 84-month term of immurement. This timely appeal followed.

## II. ANALYSIS

The appellant challenges the district court's denial of his motion to suppress on two grounds. First, he says that when Nolet's affidavit is reformed to include the material that the district court found intentionally or recklessly omitted, the reformed affidavit no longer supports a finding of probable cause. Second, he contests the district court's categorical ruling that the Franks doctrine is never implicated by the omission from a warrant affidavit of facts unknown to the affiant at the time of the application.

The starting point for the consideration of both of these claims of error is the same. In Franks, the Supreme Court established that, under the Fourth and Fourteenth Amendments, a defendant is entitled to an evidentiary hearing to test the veracity of a warrant affidavit if he can make a substantial showing that the affiant intentionally or with reckless disregard for the truth included a false statement in the affidavit, which statement was necessary to the finding of probable cause. See 438 U.S. at 155-56. Suppression of the evidence seized is justified

-7-

if, at such a hearing, the defendant proves intentional or reckless falsehood by preponderant evidence and the affidavit's creditworthy averments are insufficient to establish probable cause. See id. at 156.

Material omissions from a warrant affidavit also may furnish the basis for a successful Franks challenge. See United States v. Hadfield, 918 F.2d 987, 992 (1st Cir. 1990). The required showing is two-fold: first, the omission must have been either intentional or reckless; and second, the omitted information, if incorporated into the affidavit, must be sufficient to vitiate probable cause. See United States v. Castillo, 287 F.3d 21, 25 & n.4 (1st Cir. 2002); see also United States v. Tate, 524 F.3d 449, 456-57 (4th Cir. 2008) ("A 'literally true' affidavit . . . can be intentionally misleading if it deliberately omitted material facts which, when included, would defeat the probable cause showing and thus render false the original 'literally true' affidavit."). Because there is no requirement that every shred of known information be included in a warrant affidavit, the omission of a particular detail, without more, is not enough to satisfy the mens rea element of the Franks test. See United States v. Colkley, 899 F.2d 297, 300-01 (4th Cir. 1990). Rather, an omission triggers the exclusionary rule only if it is "designed to mislead, or . . . made in reckless disregard of whether [it] would mislead, the

magistrate" in his appraisal of the affidavit.   Id. at 301
(emphasis omitted).

Recklessness may be inferred directly from the fact of
omission only if "the omitted information was critical to the
probable cause determination."  Burke v. Town of Walpole, 405 F.3d
66, 81 (1st Cir. 2005) (emphasis supplied) (internal quotation mark
omitted).  Negligent omissions — even negligent omissions of highly
probative information — do not satisfy this strict standard.  See
Franks, 438 U.S. at 171; see also United States v. Melvin, 596 F.2d
492, 499-500 (1st Cir. 1979) (affirming finding that omission of
key witness's recantation was merely negligent, not reckless,
because of affiant's good-faith belief that recantation was
incredible).

### A.  The Reformed Affidavit.

Against this backdrop, we turn to the appellant's initial
claim of error.  Neither party contests the soundness of the
district court's plainly supportable finding that Nolet recklessly
omitted from her affidavit the three clusters of information limned
above.  The appellant nonetheless argues that the court misjudged
the weight of those omitted facts.  As he sees it, a reformed
affidavit that includes those facts falls short of establishing
probable cause.

We begin with the Fourth Amendment's command that "no
Warrants shall issue, but upon probable cause, supported by Oath or

affirmation, and particularly describing the place to be searched."
U.S. Const. amend. IV. As a general matter, a district court
should pay great respect to the issuing magistrate's determination
of probable cause. See Illinois v. Gates, 462 U.S. 213, 236
(1983). Where relevant information has been withheld from the
magistrate, however, the district court must probe the existence of
probable cause anew. See United States v. Gifford, 727 F.3d 92, 99
(1st Cir. 2013) (citing Burke, 405 F.3d at 82). Our review of the
district court's own probable cause determination is de novo. See
Ornelas v. United States, 517 U.S. 690, 699 (1996); Gifford, 727
F.3d at 99. Findings of fact, though, are reviewed only for clear
error. See Ornelas, 517 U.S. at 699.

In giving effect to the Fourth Amendment's commands, the
principal task is "to make a practical, common-sense decision
whether, given all the circumstances set forth in the affidavit
before [us], including the veracity and basis of knowledge of
persons supplying hearsay information, there is a fair probability
that contraband or evidence of a crime will be found in a
particular place." Gates, 462 U.S. at 238 (internal quotation
marks omitted); see United States v. Schaefer, 87 F.3d 562, 565
(1st Cir. 1996) ("Probable cause exists when 'the affidavit upon
which a warrant is founded demonstrates in some trustworthy fashion
the likelihood that an offense has been committed and that there is
sound reason to believe that a particular search will turn up

-10-

evidence of it.'" (quoting United States v. Aguirre, 839 F.2d 854, 857-58 (1st Cir. 1988))). Performance of this task must take account of the totality of the circumstances. See Gates, 462 U.S. at 238. Within this rubric, the statements of a law-abiding eyewitness to a crime are generally considered reliable without further corroboration. See United States v. Blount, 123 F.3d 831, 835-36 (5th Cir. 1997); see also United States v. Campbell, 732 F.2d 1017, 1019 (1st Cir. 1984).

Our review of the entire affidavit, supplemented only by the three recklessly omitted clusters of information, supports the conclusion that probable cause existed to search the appellant's home. The most trenchant of the omitted facts — Wiggin's conviction for uttering a false prescription — is surely relevant to the decisional calculus. But the commission of a past crime does not necessarily undercut a person's veracity. See United States v. Rumney, 867 F.2d 714, 720-21 (1st Cir. 1989). Even a prior conviction for a crime of dishonesty is not always dispositive of a witness's reliability. See, e.g., United States v. Meling, 47 F.3d 1546, 1554-55 (9th Cir. 1995). Here, we do not think that the court erred in ascribing such limited significance to the altered prescription conviction. After all, it is not unreasonable to think that a willingness to lie to feed a drug addiction is materially different than a willingness to level false accusations against a third party.

-11-

To be sure, the second cluster of omitted information, including Wiggin's history of mental instability and his reputation as a "police groupie," calls for some degree of increased skepticism. But a factfinder might reasonably think that these black marks against Wiggin's credibility, like his altered prescription conviction, are diminished in importance in light of countervailing indicia of truthfulness. See United States v. Reeves, 210 F.3d 1041, 1045 (9th Cir. 2000). An informant's trustworthiness may be enhanced in a number of ways, including his willingness to reveal his identity, the level of detail in his account, the basis of his knowledge, and the extent to which his statements are against his interest. See 2 Wayne R. LaFave, Search & Seizure § 3.3(c)-(e) (5th ed. 2012 & Supp. 2015). A number of such factors bolster the district court's determination that the essence of Wiggin's account was worthy of credence. Wiggin was willing to be identified despite his embarrassment about the potential revelation of his sexual orientation to his loved ones; he candidly admitted that there might be compromising pictures of him in the appellant's possession (and, thus, likely to surface in the search); and the record contains no credible suggestion of any ulterior motive for reporting the crime. All of these are positive factors in assessing Wiggin's veracity.

The third cluster of omitted information lacks any decretory significance. The modest discrepancy between Wiggin's

interview statements and his notes does not defeat probable cause. The notes indicated that the appellant was watching "young man or teen pornography" when Wiggin arrived, whereas he stated in the interview that the subjects of the videos ranged from "maybe eight" to sixteen years of age. But Wiggin also gave a physical description of the subjects, stating that "there wasn't really much of any . . . signs I guess, body hair, or facial hair and . . . you can tell when you look at ah, a[n] eighteen year old versus you know, a fourteen year old." Taken together, these statements create a fair probability that one or more of the actors was a minor. No more is exigible. See Gates, 462 U.S. at 238.

We hasten to add that Wiggin's rough guess as to the ages of the minors in the initial video was not the only basis for the conclusion that the appellant possessed child pornography. Wiggin reported seeing a number of other pictures and videos containing sexual depictions of prepubescent children. And the inference that the appellant possessed child pornography was bolstered by plausible indications that the appellant harbored a sexual interest in young boys. The affidavit related that Wiggin first met the appellant when the appellant (a counselor at a summer camp) ogled Wiggin and other young campers as they showered; that the appellant initiated a sexual relationship with Wiggin when Wiggin was still a student at the high school where the appellant worked; that the appellant became aroused when talking about a one-time rendezvous

with a teen boy who had lied about his age; and that the appellant had made sexual allusions to the nine-year-old son of Wiggin's girlfriend.

We recognize that the question is close. But assuming no duty to investigate further (an issue to which we shortly shall return), we uphold the district court's conclusion that the affidavit, reformed only to include the recklessly omitted facts, remains sufficient to establish probable cause.[2] There was no error.

## B. **The Duty of Further Inquiry.**

The appellant's second claim of error raises a question of law, which engenders de novo review. See United States v. Garcia-Hernandez, 659 F.3d 108, 111 (1st Cir. 2011). This claim is premised on Nolet's omission of information not actually known to her at the time that she prepared the warrant application, but potentially available had she inquired further. The appellant argues that Nolet was given ample reason to doubt Wiggin's veracity and that her failure to undertake a further inquiry evinced a reckless disregard for the truth. Had she undertaken such a

_____

[2] Our rejection of this claim of error should not be understood to foreclose a reassessment of probable cause by the district court if, on remand, it finds that Nolet was reckless in failing to inquire further and unearth other relevant information (such as Wiggin's false report conviction). The relative weight of these three clusters of information might be altered if the totality of the circumstances were to include additional data about Wiggin's past.

-14-

further inquiry, his argument goes, she would have learned about a critically important fact — Wiggin's false report conviction — that would have eviscerated the showing of probable cause.

At first blush, black-letter law may seem inhospitable to the appellant's argument. The prevailing view is that "[t]he failure to investigate a matter fully, to 'exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative evidence' rarely suggests a knowing or reckless disregard for the truth." Beard v. City of Northglenn, 24 F.3d 110, 116 (10th Cir. 1994) (quoting United States v. Dale, 991 F.2d 819, 844 (D.C. Cir. 1993)). Ordinarily, this makes good sense: when the affiant has no substantial reason to doubt the veracity or completeness of the information included in her affidavit, a failure either to verify the accuracy of that information or to go in search of contrary information is not reckless. See, e.g., United States v. Santana, 342 F.3d 60, 66 (1st Cir. 2003); United States v. Ranney, 298 F.3d 74, 78 (1st Cir. 2002).

But this general rule — like virtually every general rule — admits of at least one exception. To understand the operation of this exception, some background is necessary.

The Franks Court established that a defendant is entitled to an evidentiary hearing to test the veracity of a warrant affidavit if he can make a substantial showing that the affiant,

with reckless disregard for the truth, included a materially false statement in the affidavit. <u>See</u> 438 U.S. at 155-56. We have previously held that a material omission from a warrant affidavit, no less than the inclusion of a materially false statement, may furnish the basis for a successful <u>Franks</u> challenge when that omission was made with similar recklessness. <u>See</u>, <u>e.g.</u>, <u>Hadfield</u>, 918 F.2d at 992.

Withal, "the Supreme Court in <u>Franks</u> gave no guidance concerning what constitutes a reckless disregard for the truth in fourth amendment cases, except to state that 'negligence or innocent mistake [is] insufficient.'" <u>United States</u> v. <u>Davis</u>, 617 F.2d 677, 694 (D.C. Cir. 1979) (alteration in original) (quoting <u>Franks</u>, 438 U.S. at 171). We have added our own gloss in an attempt to lend color to this standard. In <u>United States</u> v. <u>Ranney</u>, we explained that reckless disregard for the truth may be proven either by evidence that "the affiant 'in fact entertained serious doubts as to the truth' of the allegations" contained in the affidavit, or by inference "'from circumstances evincing obvious reasons to doubt the veracity of the allegations.'" 298 F.3d at 78 (quoting <u>United States</u> v. <u>Williams</u>, 737 F.2d 594, 602 (7th Cir. 1984)).

With this preface, we turn to the appellant's specific claim of error. We start with the district court's supportable finding that, when proffering the warrant application, Nolet

-16-

"understood full well that [Wiggin's] credibility was at issue, based on his [altered prescription] conviction, if nothing else."[3] Tanguay, 907 F. Supp. 2d at 182. Yet, Nolet "did nothing further to check Wiggin's background," not even taking "the seemingly easy and obvious step of asking Sergeant [Broyer] what he meant by 'scrapes.'" Id. In the district court's view, Nolet "could have — and almost certainly should have — learned [about the false report conviction] before seeking the warrant." Id. The court nonetheless concluded that, as a matter of law, a failure to investigate fully could not constitute a reckless disregard for the truth. See id. (citing cases). The court therefore held that it could not "treat Wiggin's false report[] conviction, or any other part of his criminal history aside from his [altered prescription] conviction, as a reckless omission for purposes of the Franks analysis." Id. at 182-83.

We think that the district court painted with too broad a brush. Its rejection of the appellant's claim rested on the erroneous assumption that a Franks violation could not arise out of a failure to include in a warrant affidavit facts not actually known to the affiant. See id. at 182. The rule is simply not so categorical.

---

[3] Of course, this altered prescription conviction is different from the juvenile false report conviction (about which Nolet had no knowledge).

Here, Nolet had some reason to doubt the veracity of her informant. Broyer, a fellow police officer, had portrayed Wiggin as "quirky," "troubled," and possibly afflicted by some degree of mental instability. In addition, Nolet knew that Wiggin's history included the altered prescription conviction and that he had experienced other "scrapes" with the law. Given that Nolet's case for probable cause depended entirely on Wiggin's account, we think that this web of circumstantial evidence sent up a red flag — and that red flag may have been sufficient to create a duty of further inquiry. See United States v. Chesher, 678 F.2d 1353, 1361-62 (9th Cir. 1982).

To sum up, our holding is that the district court erred in ruling as a matter of law that an affiant never has a duty to make further inquiry before presenting a warrant application to a magistrate.[4] Because the court below, erroneously relying on its categorical disavowal of any duty of further inquiry, did not pose any of the further questions that had to be asked, we must regard its order denying the appellant's motion to suppress as without

---

[4] The cases cited by the district court for its categorical proposition that no duty of further inquiry ever exists, see Tanguay, 907 F. Supp. 2d at 182, do not mandate so rigid a rule. In each of those cases, the Franks challenge failed because the affiant had no reason to doubt the truthfulness of the allegations that undergirded the showing of probable cause. See Ranney, 298 F.3d at 78; Castillo, 287 F.3d at 26; United States v. Miller, 753 F.2d 1475, 1478 (9th Cir. 1985).

force pending the completion of the further proceedings described below.

This holding is not at odds with our earlier holding that the district court supportably found probable cause based on the reformed affidavit. See supra Part II(A). All that is required to trigger an officer's duty of further inquiry is her knowledge of an obvious and unexplored reason to doubt the truthfulness of the allegations. See Ranney, 298 F.3d at 78. When confronted with such a red flag, the officer should look into the matter even if she does not believe that what she will discover is likely to vitiate probable cause. After all, the officer is the only party who, in this context, has the tools to undertake any meaningful investigative work.

The trigger for further investigation may function even when the officer's obvious reason only serves to diminish her confidence to some modest degree. Pieces of evidence should not be assessed in isolation: "the whole sometimes can exceed the sum of the parts, and the appropriate test focuses on the totality of the circumstances." Mariko v. Holder, 632 F.3d 1, 6-7 (1st Cir. 2011).

A district court is in a different position. The court is tasked with making a judgment based on what appears within the four corners of the affidavit (in this case, the reformed affidavit). It is entitled to assume that the warrant affidavit is the product of a good-faith investigation and provides a reasonably

complete picture of the circumstances relevant to probable cause. See Franks, 438 U.S. at 171 (recognizing presumption of validity of warrant affidavit). Relying on this implicit representation, a court may reasonably find probable cause despite some level of concern about the completeness of the investigation. While the court below plainly entertained some doubts based on Nolet's failure to follow investigatory leads, see Tanguay, 907 F. Supp. 2d at 181-82, those doubts were in the end insufficient to erode probable cause.

Of course, explanation of those doubts may paint a different picture. If and when the court is at liberty to factor the results of a further investigation into the mix, its judgment may change.

The questions that remain are fact-sensitive, and the answers are not so apparent that we can decide them without the benefit of additional factfinding. Consequently, we must return the case to the district court so that it can make the requisite findings. On remand, the court must first determine whether the information known to Nolet gave her an obvious reason to doubt Wiggin's truthfulness and, thus, triggered a duty of further inquiry. If so, the court then must ask whether Nolet's doubts were of such a magnitude that her failure to conduct an additional inquiry evinced a reckless disregard for the truth as opposed to, say, mere negligence. See Ranney, 298 F.3d at 78. In responding

-20-

to these two questions, the court is not bound by an affiant's declaration that she firmly believed in the credibility of the informant or the truth of his story.  Rather, the court may evaluate such a declaration in light of circumstantial evidence indicating that the affiant had "obvious reasons to doubt the veracity of the informant or the accuracy of his reports."  St. Amant v. Thompson, 390 U.S. 727, 732 (1968).

If the answers to these initial questions are in the affirmative, the court must ask a third question: whether Nolet, had she made a good-faith effort to dispel those doubts, would have discovered new information that warranted inclusion in her affidavit.  And if the answer to this third question is also in the affirmative, the court must consider yet a fourth question: whether the affidavit, expanded to include that new information, would continue to support a finding of probable cause.  See Castillo, 287 F.3d at 26.  We take no view as to either the answers to these questions or the outcome of the proceedings on remand.

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, we remand to the district court for further proceedings consistent with this opinion.  The district court shall reexamine its Franks determination in light of its further factfinding and, if it now concludes that suppression is warranted, it shall enter an order to that effect and transmit the order, along with a statement of its

findings and reasons, to this court.  If, however, the district court continues to uphold the search, it shall enter an order to that effect and transmit that order to us, along with a statement of its findings and reasons.  Should either party desire appellate review of the district court's supplemental order and/or findings and reasons, he or it may file a new notice of appeal within the customary time parameters, see Fed. R. App. P. 4(b), which will be consolidated with the present appeal.

We stay proceedings in this court pending our further order and retain appellate jurisdiction over this matter.  The parties shall file a joint status report in this court within 60 days following the issuance of this opinion, and at 60-day intervals thereafter.

**So Ordered.**