*33 United States v. Rigaud , 684 F.3d 169, 173 (1st Cir. 2012). To meet this burden, a defendant "must prove that the affiant in fact entertained serious doubts as to the truth of the allegations. Recklessness may be inferred from circumstances evincing obvious reasons to doubt the veracity of the allegations." United States v. Ranney , 298 F.3d 74, 78 (1st Cir. 2002) (quoting United States v. Williams , 737 F.2d 594, 602 (7th Cir. 1984) ).
Discussion
1. Franks Hearing
Undoubtedly, the foundation of a confidential informant's knowledge, and his trustworthiness, are significant factors in determining whether information in an affidavit supports a finding of probable cause. See Illinois v. Gates , 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Defendant contends that certain affidavits "failed to report ... that the informant was engaged in criminal activity of his own" and therefore did not provide the reviewing judge an opportunity to fairly evaluate CS-1's reliability. (Docket No. 126 at 2).
First, as noted above, each affidavit alleged to omit the CS-1's criminal conduct does include at least some discussion of it. Thus, the affidavits "make[ ] no secret of [CS-1's] criminality." United States v. Belton , 414 F.Supp.2d 101, 110 (D.N.H. 2006). Those disclosures undermine the Defendant's contention that agents deliberately or recklessly omitted information. See United States v. Colkley , 899 F.2d 297 (4th Cir. 1990) (" Franks protects against omissions that are designed to mislead , or that are made in reckless disregard of whether they would mislead , the magistrate." (emphasis in original) ).
Second, even if the Government did deliberately or recklessly omit relevant evidence, Defendant would need to demonstrate that, had the affidavits contained the pertinent evidence, it would have altered the finding of probable cause. See Rigaud , 684 F.3d at 173 n. 5 ("There is an important difference between the necessary inquiries when the challenge is to the omission of an allegedly material fact rather than to the inclusion of an allegedly false material statement. With an omission, the inquiry is whether its inclusion in an affidavit would have led to a negative finding by the magistrate on probable cause." (quotation marks and citation omitted) ). Here, "despite the omission of certain details"-for instance, the omission of the unverified rumors that CS-1 had sold drugs on the Defendant's behalf from the second ping warrant and first wiretap applications-the disclosures were sufficient to put the issuing judge on notice that CS-1 was not a "model citizen" when assessing his/her reliability. Id. ; see also United States v. Hall , 171 F.3d 1133, 1143 (8th Cir. 1999) (concluding that omission of informant's full criminal history from warrant application was immaterial to a finding of probable cause where application cited her participation in prostitution and auto theft); United States v. Avery , 295 F.3d 1158, 1168 (10th Cir. 2002) ("[T]he affidavit, though not explicitly mentioning the confidential informant's criminal history, informed the magistrate judge that the informant had used and sold cocaine in the past, thus putting the magistrate judge on notice that the confidential informant was not a model citizen and that he had previously violated laws." (quotation marks and citation omitted) ).
Moreover, any omitted evidence that may have further called CS-1's reliability into question is undermined by the repeated corroboration of the evidence he/she provided agents. See e.g. , Docket No. 142-1 ¶ 12 n. 1. See also Rigaud , 684 F.3d 169, 175 ("We also agree with the district *34 court that ample corroboration of the information that Trainor provided neutralizes any apartment untrustworthiness ...."); United States v. Coplin , 2017 WL 353998 (D. Mass. Jan. 24, 2017) ("[T]he fact that an informant has cooperated with a police investigation in a direct and closely supervised capacity (for example, in the controlled purchase or delivery of narcotics) is strong evidence of reliability.").
Finally, even if the Court were to find that the issuing judges erroneously relied on CS-1 when assessing probable cause, there was ample evidence contained in the affidavits, independent of CS-1's reliability, that could have established probable cause. For instance, in the affidavit in support of the wiretap (Docket No. 141-3) the affiant, when recounting the third controlled purchase, noted that CS-1 arranged a meeting with the Defendant on a phone call recorded by agents. Subsequently, agents observed the Defendant leave his residence and meet CS-1 at the agreed location. Agents searched CS-1 for contraband before meeting the Defendant and provided him money. An undercover agent then accompanied CS-1 in a vehicle. CS-1 was wearing a wire and observed by agents conducting a hand-to-hand transaction with the Defendant. Agents then searched CS-1 and found him in possession of 20 grams of heroine. Id. ¶¶ 38-39. Similar accounts are included in the other pertinent affidavits, see, e.g. , Docket No. 142-1, ¶¶ 17-18; Docket No. 142-2, ¶¶ 14-15, and of other controlled purchases. See, e.g. , Docket No. 141-3, ¶¶ 41-43. Therefore, I find that the affidavits establish probable cause apart from any questions of CS-1's reliability, which was either confirmed by the independent evidence or rendered irrelevant because of it. See United States v. Carney , 717 Fed.Appx. 185, 187 (3d Cir.2018) ("However, the CI's claims regarding Carney's drug dealing were also corroborated by the controlled buy at Carney's residence. The CI's credibility thus reasonably could be considered either proven or irrelevant by a magistrate. In short, even if the affidavit had contained the additional facts Carney argues were impermissibly excluded, the probable cause analysis would be no different.").[2]
Therefore, I do not find that there was a reckless omission in the relevant affidavits. Further, despite the omission of certain details, the issuing judges were aware of CS-1's potential unreliability and the evidence that he/she provided was repeatedly corroborated. Consequently, any omissions were not necessary in the sense that they would not have altered the finding of probable cause. Accordingly, Defendant has failed to meet his burden to trigger a Franks hearing.
2. Motion to Suppress
"In order for a warrant to be voided and the fruits of the search excluded, the defendant must meet an even more exacting standard [than for a Franks hearing]: he must (1) show that the affiant in fact made a false statement knowingly and *35 intentionally, or with reckless disregard for the truth, (2) make this showing by a preponderance of the evidence, and (3) show in addition that with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." Graf , 784 F.3d at 10-11 (alteration in original) (quoting United States v. Tzannos , 460 F.3d 128, 136 (1st Cir. 2006) ).
As noted above, the Defendant has not made a substantial showing, let alone demonstrated by a preponderance of the evidence, that had the affidavits included the information he argues was impermissibly omitted, the probable cause analysis would have been different. Indeed, I find that the result would have been the same. As a result, the Defendant's motion to suppress must fail.
Conclusion
For the reasons stated above, the Defendant is not entitled to a Franks hearing and the motion to suppress (Docket No. 126) is denied.
SO ORDERED

The Defendant also argues that agents ignored information pertinent to CS-1's credibility. For instance, the Defendant notes that "CS-1 discussed 'cutting' the drugs and told the defendant to cut the drugs he was purchasing form him on 1/30/17. During the 12/6/16 conversation monitored by agents CS-1 was asked if he wanted the drugs cut. Individuals purchasing drugs do not ask that the drugs be diluted before the purchase. Rather they seek the highest quality possible. This alone should have alerted these expert narcotics agents that something was terribly amiss." (Docket No. 126 at 2 n. 1). While the Defendant might be correct, whether CS-1 wanted the drugs diluted would not have altered the probable cause analysis. The Defendant contends that the discussion of dilution shows that CS-1 was untrustworthy. The fact remains, however, that CS-1 bought drugs from the Defendant. Further, as noted above, this fact was confirmed with evidence independent of CS-1's reliability as an informant.