# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

### In Case No. 2022-0718, <u>State of New Hampshire v. Vincent Chaney</u>, the court on May 3, 2024, issued the following order:

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order.  See <u>Sup. Ct. R.</u> 20(2).  The defendant, Vincent Chaney, appeals two orders from Superior Court (<u>Nicolosi</u>, J.) denying his motions to suppress and for a new trial.  The defendant argues that the court erred in denying: (1) his motion to suppress based on misrepresentations or omissions contained within the search warrant affidavit that were sufficiently material to undermine a finding of probable cause; and (2) his motion for a new trial due to ineffective assistance of counsel with respect to the hearing on his motion to suppress.  We conclude that the affidavit did not contain material misrepresentations or omissions and that the alleged error by defense counsel at the suppression hearing could not have prejudiced the outcome of the case.  Accordingly, we affirm.

The following facts are taken from the trial court's orders on the defendant's suppression motion and his motion for a new trial or are otherwise supported by the record.  In 2018, the defendant and Castro traveled to Florida and purchased three pieces of jewelry: (1) a necklace worth $63,138 (hereinafter, the large necklace); (2) a necklace worth $4,500 (hereinafter, the small necklace); and (3) a bracelet worth $16,050.  The defendant and Castro share a home.  Following the purchases, the defendant took out an insurance policy with Phoenix Insurance Company, also known as Travelers Insurance, on all three pieces of jewelry.

In January 2019, the defendant filed an insurance claim with Travelers Insurance for the small necklace and bracelet.  He stated that he removed the two pieces of jewelry while showering at a friend's house and mistakenly left the jewelry behind.  When he later returned to retrieve the two items, he discovered that they were missing.  Travelers Insurance paid the claim in March.  In May, the defendant filed a second claim with Travelers Insurance alleging that the large necklace had been stolen during an armed robbery in Boston.

Travelers Insurance ultimately denied the second claim due to the defendant's non-cooperation and referred the case to the New Hampshire Insurance Department (Department), indicating that it believed the insurance claim to be suspicious.  After reviewing the claims file, an investigator with the Department opened a criminal investigation.  During the investigation, the investigator learned that Castro had

twice pawned a bracelet identical to the one reported missing in the first insurance claim. At the time of the investigation, the bracelet remained at the pawn shop.

In December 2019, the investigator interviewed Castro after he obtained approval for a one-party intercept in order to record the interview. Castro described the three pieces of jewelry and alleged that they were all either missing or stolen. She stated that she had an older bracelet at her house similar to the one that went missing but that she had never insured the older bracelet due to its age. She also stated that she had never pawned the older bracelet. Once confronted with the evidence obtained from the pawn shop, however, Castro changed her story and stated that the bracelet at the pawn shop was the older bracelet that she previously claimed was at her house. At that point, Castro's demeanor changed, and she became less responsive to the investigator's questions. The investigator challenged Castro's story, noting that the pawned bracelet was identical to the bracelet that had been reported missing and that Castro's story about the two identical bracelets was difficult to believe. Castro began rummaging in her purse for her keys and the interview ended soon thereafter.

The investigator referred his investigation to the New Hampshire Department of Justice (DOJ). He documented his investigation in an affidavit that the DOJ used to apply for a warrant to search the defendant, Castro, and their residence for the two missing necklaces. In January 2020, the application was granted and the warrant was executed. During the search, officers discovered drugs in the defendant's bedroom. The search was halted and an expanded warrant was obtained, seeking drugs and other instrumentalities of drug distribution. Thereafter, officers discovered additional drugs, drug paraphernalia, multiple firearms, and one of the missing necklaces. The defendant was subsequently charged with possession of a controlled substance with intent to sell and numerous counts of being a felon in possession of a deadly weapon. The defendant was separately charged with three counts of insurance fraud in connection with the claims he made to Travelers Insurance.

In both cases, the defendant filed motions to suppress the evidence discovered during the searches.[1] The defendant argued that the affidavit supporting the first search warrant was deficient for several reasons, including that it contained material misrepresentations or omissions, and when such challenged portions were excised, the affidavit failed to establish probable cause. The State objected to both motions. Following a hearing, the court issued an order in June 2021 denying both

---

[1] The defendant was represented by two different attorneys on the criminal charges; one represented the defendant on the insurance fraud charges, and the other represented the defendant on the unlawful possession charges. Both attorneys filed separate, yet similar, motions to suppress the evidence obtained through the execution of the search warrant. The trial court held one hearing addressing both motions and the parties agreed that the court would issue one order that would address the two motions to suppress. Following the defendant's convictions, the State nolle prossed the insurance fraud charges. Therefore, only the trial court's ruling on the suppression motion filed in the possession case is at issue on appeal.

motions to suppress. In July, after a three-day jury trial, the defendant was convicted on one count of possession of a controlled drug with intent to sell and seven counts of felon in possession of a firearm.

In April 2022, the defendant, represented by different counsel, moved for a new trial on the ground that his trial counsel for the possession charges was constitutionally ineffective by failing to introduce certain evidence in connection with the pretrial suppression proceeding. The State objected. In July, the court held a hearing on the motion and, the following month, issued an order concluding that the defendant's trial counsel was not constitutionally ineffective and denying the defendant's motion. This appeal followed.

The defendant first argues that the trial court erred in denying his motion to suppress because "[t]he search warrant affidavit contained misrepresentations and omissions sufficiently material to undermine the finding of probable cause," in violation of his state and federal constitutional rights. See N.H. CONST. pt. I, art. 19; U.S. CONST. amend. IV. We first address the defendant's claim under the State Constitution and rely upon federal law only to aid in our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983).

Part I, Article 19 of the New Hampshire Constitution requires that search warrants be supported by probable cause. State v. Page, 172 N.H. 46, 50 (2019). To establish probable cause, the affiant need only present the magistrate with sufficient facts and circumstances to demonstrate a substantial likelihood that the evidence or contraband sought will be found in the place to be searched. State v. Zwicker, 151 N.H. 179, 185 (2004). We review the trial court's ruling on probable cause de novo, except with respect to any controlling factual findings. Id. We assign great deference to the court's determination of probable cause and do not invalidate a warrant by interpreting the evidence submitted in a hypertechnical sense. Id.

"[A] facially sufficient but misrepresentative affidavit cannot be the basis for a search warrant as the magistrate will not have been able to make the requisite determination of probable cause." State v. Spero, 117 N.H. 199, 204 (1977). To suppress evidence seized under a search warrant, the defendant must show that the misrepresentations in the supporting affidavit were material and were "made intentionally or recklessly." Id. at 205. In addition to misstatements, omissions can also be construed as misrepresentations. State v. Gubitosi, 151 N.H. 764, 768 (2005). Materiality is determined by whether, if the omitted statements were included, there would still be probable cause. Id. Whether an affidavit contains a misrepresentation and whether the misrepresentation was material are questions of law, which this court decides de novo. State v. Stern, 150 N.H. 705, 710-11 (2004).

The defendant argues that the trial court erred in concluding that there were no material misrepresentations or omissions sufficient to undermine a finding of probable cause. The defendant argues that the affidavit failed to reference a police

interview documenting that the defendant's friend corroborated the defendant's account of the loss of the small necklace and bracelet. The defendant also argues that the affidavit misrepresented: (1) the defendant's and Castro's finances; (2) Castro's willingness to provide her address to the investigator; and (3) how the interview ended.

In its order on the defendant's motion to suppress, the trial court concluded that the affidavit supporting the search warrant did not contain any material misrepresentations or omissions that rendered the warrant invalid. Regarding the investigator's failure to mention the friend's corroboration, the court ruled any such omission was immaterial to a finding of probable cause. The court reasoned that it was unclear what value the friend's account would provide given that the defendant did not provide any information to demonstrate the friend's reliability and that the alleged loss occurred outside the friend's presence. Furthermore, even if the friend's account was exculpatory, the court found that the inculpatory information as to the claimed existence of a second bracelet identical to the one that had been lost still established probable cause to search for the two missing necklaces.

Regarding the alleged misrepresentations of Castro's statements during her interview with the investigator, the trial court found that any misstatement regarding Castro's and the defendant's finances was immaterial given that "there was ample other information that Castro and Chaney were not flush with money." The court also found that even though the affidavit incorrectly stated that Castro refused to provide her home address, "any recalcitrance on Castro's part to share the information about her address is not central to the finding of probable [cause]." "Therefore, even if the statement that she refused to give her address is excised, sufficient facts remain for the issuance of a lawful warrant." Finally, the court found that, although the defendant's assertion that the investigator, rather than Castro, initiated the termination of the interview was "mostly accurate," Castro nevertheless "became less responsive when [the investigator] tried to get more explanation about her having a second identical bracelet." The court concluded that "[w]hile [the investigator's] characterization perhaps lacks nuance," the statement was not "so misleading to the point that it constitutes a material misrepresentation." In reaching its decision, the court had access to the audio recording of the interview between Castro and the investigator.

Based upon our review of the record submitted on appeal, we agree with the trial court's well-reasoned and thorough order that the affidavit supporting the search warrant did not contain any material omissions or misrepresentations that rendered the warrant invalid.[2] The federal constitutional standard relative to misrepresentations in affidavits is identical to our own. State v. Carroll, 131 N.H.

---

[2] The defendant also disputes the trial court's finding that the investigator did not act intentionally or recklessly regarding any omissions or misrepresentations. Given that the trial court correctly concluded that the affidavit did not contain any material misrepresentations or omissions, we need not consider whether the investigator acted recklessly or intentionally. See State v. Dalling, 159 N.H. 183, 187 (2009); State v. Chaisson, 125 N.H. 810, 814 (1984).

4

179, 192 (1988).  We therefore reach the same result under the Federal Constitution.

The defendant next argues that the trial court erred in denying his motion for a new trial alleging ineffective assistance of counsel in violation of the State and Federal Constitutions.  We first examine the constitutional competency of counsel's performance under the State Constitution and rely upon federal case law only for guidance.  State v. Whittaker, 158 N.H. 762, 768 (2009).  Because the standard for determining whether a defendant has received ineffective assistance of counsel is the same under both constitutions, necessarily, we reach the same result under the Federal Constitution as we do under the State Constitution.  Id.

To prevail upon a claim of ineffective assistance of counsel, the defendant must demonstrate, "first, that counsel's representation was constitutionally deficient and, second, that counsel's deficient performance actually prejudiced the outcome of the case."  State v. Collins, 166 N.H. 210, 212 (2014).  On appeal, if we determine that a defendant has failed to meet either prong of the test, we need not consider the other one.  State v. Kepple, 155 N.H. 267, 270 (2007).  "To satisfy the first prong of the test, the performance prong, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  State v. Labrie, 172 N.H. 223, 236 (2019) (quotation omitted).  To satisfy the second prong, the prejudice prong, the defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 237 (quotation omitted).  Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact.  Id.  We will not disturb the trial court's factual findings unless they are not supported by the evidence or are erroneous as a matter of law, and we review the ultimate determination of whether each prong is met de novo.  Id.

The defendant argues that, pursuant to United States v. Tanguay, 787 F.3d 44, 51-54 (1st Cir. 2015), trial counsel was constitutionally ineffective for failing to introduce a 2005 sales receipt for the older bracelet at the suppression hearing.  Specifically, the defendant argues that, under Tanguay, the investigator had a duty of further inquiry after Castro told him that she had a second bracelet identical to the one that was the subject of the first insurance claim, that further inquiry would have revealed the 2005 receipt, and that with the inclusion of the receipt, "the warrant no longer states probable cause."  See Tanguay, 787 F.3d at 54.  Therefore, the defendant argues, trial counsel erred in failing to invoke Tanguay at the suppression hearing, and because Tanguay would have permitted introduction of the 2005 receipt, which, in turn, would have defeated probable cause, such error prejudiced the outcome of the case.

In its order on the defendant's motion for a new trial, the trial court considered whether, pursuant to the test articulated in Tanguay, the investigator had a duty of further inquiry that ultimately would have revealed the 2005 receipt. In applying the first prong of the test, the court considered whether the information

5

known to the investigator gave him an obvious reason to doubt the allegations against the defendant, thus triggering a duty of further inquiry. The court found that, based upon the totality of the facts of the case, the investigator "did not have an obvious reason to doubt the allegations against the defendant, and thus he had no duty of further inquiry." The court also found that the investigator "clearly doubted" Castro's claim that she owned two identical bracelets, yet when the investigator expressed his incredulity to Castro, Castro did not claim to have a receipt proving the existence of the older bracelet nor did she offer "anything other than the bald assertion that there was a second bracelet." As previously discussed, in reaching its decision, the court had access to both the audio recording of the interview between Castro and the investigator, as well as a transcript of the recording.

Based upon our review of the record submitted on appeal, we agree with the trial court that, because the defendant "failed to establish that [the investigator] had a duty to further investigate the existence of a second bracelet," the investigator "did not make a material omission in the warrant and the Court could not have considered the receipt in evaluating the warrant in connection with the defendant's motion to suppress." See id. at 53 (explaining that to trigger a duty of further inquiry, the affiant must have "knowledge of an obvious and unexplored reason to doubt the truthfulness of the allegations"). Accordingly, we need not decide whether trial counsel's decision not to introduce the 2005 receipt under Tanguay fell below an objective standard of reasonableness, because any such error could not have prejudiced the outcome of the case given that the investigator had no duty of further inquiry under the Tanguay test. See Labrie, 172 N.H. at 236-37.

In the alternative, the defendant argues that even if the receipt could not have been considered at the suppression hearing pursuant to United States v. Tanguay, trial counsel nevertheless should have attempted to introduce the receipt. Although the defendant acknowledges that "in the usual case, information outside the affidavit is not pertinent," he argues that here, the receipt "was not truly outside the affidavit, as it related to the older bracelet, and [the investigator's] affidavit repeatedly cited Castro's reference to the older bracelet." The defendant also argues that even if the receipt was outside the affidavit, "such information is fair game if it sheds light on an issue pertinent to probable cause" — namely, the existence of an identical second bracelet.

The task of the issuing court "is to make a practical, common-sense decision whether given all the circumstances set forth in the affidavit before it, including 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." State v. Letoile, 166 N.H. 269, 273 (2014). The reviewing court "may consider only the information that the police brought to the issuing court's attention." Id. Here, the receipt was not mentioned in the affidavit, as the investigator did not know about its existence at that time. Accordingly, neither the issuing court nor the reviewing court could have considered the 2005 receipt when determining

probable cause, and any alleged error in not attempting to introduce it at the suppression hearing did not prejudice the defendant's case.

<u>Affirmed</u>.

BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,
Clerk**

7