# United States Court of Appeals
## For the First Circuit

No. 12-2186

UNITED STATES OF AMERICA,

Appellant,

v.

PAUL GIFFORD,

Defendant, Appellee.

————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

————————————

Before

Lynch, Chief Judge,
Torruella and Howard, Circuit Judges.

————————————

Seth R. Aframe, Assistant United States Attorney, with whom John P. Kacavas, United States Attorney, was on brief for appellant.
Behzad Mirhashem, of the Federal Defender Office, with whom Jeffrey S. Levin, was on brief for appellee.

————————————

August 13, 2013

————————————

**TORRUELLA, <u>Circuit Judge</u>.**   This appeal concerns the sufficiency of a search warrant affidavit in establishing probable cause to search defendant-appellee Paul Gifford's ("Gifford") home for a marijuana grow operation.   The United States Government ("Government") challenges the district court's suppression of evidence seized from Gifford's home, arguing that the search warrant affidavit did not omit information material to a probable cause determination.   Since we find that the search warrant in fact contained reckless material omissions, and the properly reformed search warrant affidavit failed to establish probable cause, we affirm the district court in all respects.

## I.  Background

### A.  Factual Background

On February 14, 2011, a New Hampshire state court issued a warrant to search Gifford's home relying on a supporting affidavit submitted by New Hampshire State Trooper First Class Steven D. Tarr ("Trooper Tarr").   We quote at length from Trooper Tarr's affidavit, based in part on information received from an unnamed informant,[1] as the core issue on appeal concerns its sufficiency for establishing probable cause:

---

[1]   During the motion to suppress hearing, the confidential informant was identified as Gifford's brother-in-law, Donald Desmond, Jr.   However, none of the information pertaining to the identification of the informant or his relationship to Gifford was included in the search warrant affidavit.

3. During the month of November 2010, the affiant received information reference [sic] the possible manufacture of the controlled drug marijuana at the following address: 46 South Road; [Town omitted], New Hampshire. By a: Paul Gifford [DOB omitted].

This information was provided through a reliable confidential informant with knowledge of Gifford's personal practices as well as knowledge of the inside of the residence. According to the confidential informant, Gifford is a landscaper by trade but does not work on a regular basis. The informant explained that Gifford considers growing marijuana to be his full time occupation and means by which to earn money. Additionally, information received from this informant on February 9, 2001 revealed that Gifford is currently in the process of growing marijuana at the residence and has leftover, finished marijuana from an autumn indoor grow within the residence.

4. This affiant gathered information relative to the resident of the home at that address through Department of Motor Vehicle [sic] and Town of [Town omitted], NH records. I learned that the following individual resides at that address: Paul Gifford [DOB: omitted].

. . . .

6. On January 19, 2011[,] this affiant received a copy of a police report from the [Town omitted] Poilce [sic] Department that had been generated by Officer John Ventura. The report related to a home visit made to the residence by Officer Ventura and Lisa Tyler of Adult Protective Services. While Officer Ventura was at the residence to assist Adult Protective Services, he made contact with Gifford who met them at the front door of the residence and "quickly" shut the door behind him. Officer Ventura was "immediately overwhelmed by the strong odor of burnt marijuana coming from Paul's person." Later, when allowed into the home, Officer Ventura

again "detected the same odor of burnt marijuana."

7. This affiant drove to 46 South Road, [Town omitted], NH. I noted that the residence is a large building with an attached barn. It is located directly across the street from a school.

8. During this investigation, this affiant requested the power records from Unitil Corporation utilities company for 46 South Road, [Town omitted], NH. On November 23, 2010[,] Unitil Corporation was served with a Subpoena for the electrical power records of 46 South Road, [Town omitted], NH. Using the subpoena process, this affiant found that the electric utility bill for this residence is listed to Paul Gifford.

9. This affiant found that the electric usage for the home appears to be exceptionally higher than that of a home of a similar size. In fact, the electrical usage at the address during the past sixteen months averages approximately 3174.06 kilowatt hours per billing cycle. During this period, the residence used 2323.0 kilowatt hours during the lowest consumption billing cycle and 4690.0 kilowatt hours during the highest consumption billing cycle. A billing cycle encompasses approximately one month.

10. This affiant also obtained electrical power records from surrounding residences/customers of Unitil through the subpoena process. The electrical usage in these homes was significantly lower than that of 46 South Road. Unitil records revealed that the residence of 34 South Road utilized an average of 717.69 kilowatt hours per billing cycle with a lowest consumption cycle of 551.0 kilowatt hours and a highest consumption of 1023.0 kilowatt hours. Similarly, the residence of 51 South Road utilized an average of 861.19 kilowatt hours per billing cycle with a lowest consumption

cycle of 467.0 kilowatt hours and a highest consumption of 1554.0 kilowatt hours.

11.  As is evidenced above, the residence of 46 South Road, [Town omitted], NH utilized over three times the average electrical consumption per billing cycle than its neighbors.  [Chart omitted].  Investigation has revealed that the residence at 46 South Road is heated by oil.  There are no hot tubs, saunas or any other additional such items to explain a higher than usual electrical usage.

12.  Based upon this affiant's training and experience, I know that high amounts of electricity are needed by indoor cannabis cultivators to power pumps, timers, heaters, air conditioners, fans and other electrical equipment as well as the 1000 watt lights necessary to grow cannabis.  A typical "grow schedule" would show increasing then decreasing electrical use in a 90 to 120 day cycle unless the cultivator is "rotating" young, juvenile and adult plants in an effort to increase his yield.  This would extend the periods of high electrical use depending on how many "rotations" of plants a grower has at a given time.

The rest of the affidavit details Trooper Tarr's general knowledge of marijuana grow operations.

The search warrant was executed on February 15, 2011. Based on the items seized from Gifford's home, he was charged in the United States District Court for the District of New Hampshire with manufacturing marijuana, possessing marijuana with the intent to distribute, and possessing a firearm in furtherance of a drug trafficking crime.

## B.  Procedural History

Following Gifford's indictment, he filed a motion to suppress the evidence seized at his home, arguing, <u>inter</u> <u>alia</u>, that the search warrant affidavit lacked probable cause.  Gifford claimed that the warrant was facially insufficient to establish probable cause.  In the alternative, he argued that the affidavit had material omissions, including that one of the mentioned comparator houses for purposes of measuring electricity use was substantially smaller than the target house.

The Government objected to Gifford's motion, but before the district court could address it, Gifford and the Government reached a plea agreement wherein the Government agreed to dismiss the firearm count and Gifford agreed to a 48-month disposition on the drug charges.  However, Gifford withdrew his plea after the district court challenged the agreed-upon disposition at sentencing.  Specifically, the district court stated that it thought that a sentence of between 18 and 24 months was appropriate given that the count driving the high sentence was the firearm count, and if the defendant were to proceed to trial, it was unlikely to impose a sentence of more than 60 months.

After Gifford withdrew his plea, he refiled his motion to suppress.  The district court convened a hearing on the motion.  At the hearing, the Government acknowledged that the affiant (1) knew that one of the comparator houses, 34 South Road, was substantially

smaller than the target house; (2) knew that 51 South Road was similarly sized to the target house; and (3) did not include the fact that 34 South Road was of a substantially smaller size in the affidavit. The Government also conceded that the affiant knew that a horse boarding business operated out of the Gifford home, but the affiant claimed that he saw no signs of its operation when he drove by the residence, even though a banner advertising the business hung outside.[2] Based on these representations by the Government at the hearing, the parties agreed that the court could rule on the suppression issue on undisputed facts, without receiving live testimony.

After hearing the parties' arguments, the district court held that the suppression of the search of the target residence was warranted under Franks v. Delaware, 438 U.S. 154 (1978), because the affiant made a material omission from the search warrant affidavit in reckless disregard for the truth.[3] Specifically, the

_____

[2] At the hearing, Gifford proffered evidence that the horses' frequent watering required electrically pumping several hundred gallons of water every day, and that a large number of bucket heaters were used to keep water from freezing. Further, fans were used to circulate air in the barn, and depending on the season, multiple electric space heaters or air conditioners were used to heat or cool the farmhouse, which was poorly insulated. Finally, Gifford offered evidence that his wife's mother, who was living with them, was disabled and incontinent, requiring them to do several loads of laundry in the washer and dryer on a daily basis.

[3] The court declined to rule on the "close" issue of whether the warrant failed on its face to establish probable cause, basing its decision instead on the material omissions and misrepresentations contained in the search warrant under Franks.

court found that the affiant recklessly omitted from his affidavit the fact that the comparator house at 34 South Road was one-third the size of the target house. The district court found this omission to be material because, in its view, if the information about 34 South Road had been included in the affidavit, that affidavit would have failed to establish probable cause for a search. The court additionally observed that there were insufficient indicia of reliability supporting the informant's tip since very little information was provided about the informant.

Compounding the insufficiencies, the court continued, was the fact that the affiant had not provided adequate corroborating facts from his own investigation to permit a probable cause finding. The statements in the affidavit regarding the marijuana odor, it found, were not corroborative of the informant's tip because they demonstrated only that burnt marijuana may have been present, not that it was grown. The evidence of the electricity consumption was rendered meaningless, the court stated, because the omission of material information regarding the size of the comparator home at 34 South Road would leave only the comparison between the target house and 51 South Road. The court concluded that the information showing that 51 South Road used substantially less electricity than the target house was meaningless since there could be numerous innocuous explanations for the variation in

electricity usage having nothing to do with a marijuana grow operation.

Since neither the odor nor the electricity consumption corroborated the informant's tip, the court concluded that the reformed affidavit -- including the omitted information -- lacked probable cause. The district court thus issued an order suppressing the evidence seized from Gifford's home. The Government timely appealed the suppression order.

## II. Discussion

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV. With limited exceptions, it requires police officers to secure a search warrant supported by probable cause prior to effecting a search or seizure. United States v. Paneto, 661 F.3d 709, 713 (1st Cir. 2011). Probable cause exists when the totality of the circumstances suggests that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Hicks, 575 F.3d 130, 136 (1st Cir. 2009) (quoting United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999)) (internal quotation marks omitted).

Information supporting probable cause for a warrant is often set forth in an affidavit provided by a law enforcement officer, as happened here. See United States v. Rigaud, 684 F.3d

169, 173 (1st Cir. 2012). An affidavit supporting a search warrant is presumptively valid. Id. But if a defendant makes a "substantial preliminary showing that a false statement . . . with reckless disregard for the truth[] was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." Franks v. Delaware, 438 U.S. 154, 155-56 (1978).

For a warrant to be voided and the fruits of a search excluded, the defendant must: (1) show that the affiant in fact made a false statement or omission "knowingly and intentionally, or with reckless disregard for the truth," (2) make this showing by a preponderance of the evidence, and (3) show that, with the recklessly omitted information added to the affidavit, the reformed affidavit fails to establish probable cause. United States v. Tzannos, 460 F.3d 128, 136 (1st Cir. 2006). An allegation is made with "reckless disregard for the truth" if the affiant "in fact entertained serious doubts as to the truth of the allegations or where circumstances evinced obvious reasons to doubt the veracity of the allegations in the application." Burke v. Town of Walpole, 405 F.3d 66, 81 (1st Cir. 2005) (quoting United States v. Ranney, 298 F.3d 74, 78 (1st Cir. 1999)) (internal quotation marks omitted). "In the case of allegedly material omissions, recklessness may be inferred where the omitted information was

critical to the probable cause determination." Id. at 81-82 (internal quotation marks omitted).

Where the primary basis for a probable cause determination is information provided by a confidential informant, the affidavit must provide some information from which a magistrate can credit the informant's credibility. United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002). "[A] probable cause finding may be based on an informant's tip so long as the probability of a lying or inaccurate informer has been sufficiently reduced." United States v. Greenburg, 410 F.3d 63, 69 (1st Cir. 2005). We apply a "nonexhaustive list of factors" to examine the affidavit's probable cause showing, which include, among others: (1) whether the affidavit establishes the probable veracity and basis of knowledge of persons supplying hearsay information; (2) whether an informant's statements reflect first-hand knowledge; (3) whether some or all of the informant's factual statements were corroborated wherever reasonable or practicable (e.g., through police surveillance); and (4) whether a law enforcement affiant assessed, from his professional standpoint, experience, and expertise, the probable significance of the informant's provided information. United States v. Tiem Trinh, 665 F.3d 1, 10 (1st Cir. 2011).

We review a district court's legal conclusion that a given set of facts constituted probable cause de novo, "whereas factual findings are reviewed for clear error." United States v.

Kearney, 672 F.3d 81, 88-89 (quoting United States v. McMullin, 568 F.3d 1, 5 (1st Cir. 2009)) (internal quotation marks omitted).  In the absence of a reckless omission, a search warrant is reviewed with deference to the issuing magistrate, but allegations of reckless omission "implicate the very truthfulness, not just the sufficiency, of a warrant application."  Burke, 405 F.3d at 82. Therefore, if such allegations prove to be true, we owe no deference to a magistrate's decision because "'no magistrate will have made a prior probable cause determination' based on the correct version of the material facts."  Id. (quoting Velardi v. Walsh, 40 F.3d 569, 574 n.1 (2d Cir. 1994)).

We now turn to the questions directly on appeal: whether the district court erred in finding the omissions in the search warrant of Gifford's home material, and if the reformed search warrant affidavit which includes the omitted material is sufficient to establish probable cause.

## A.  Materiality of Omissions

The Government argues on appeal that the district court erred in finding material the omission of information pertaining to the size of the comparator's house at 34 South Road because, even if the size of the house were added to the affidavit, or, alternatively, the reference to the house were eliminated entirely, the affidavit would still establish probable cause.  This is because, the Government claims, there was ample recognized indicia

that the informant was sufficiently reliable and there was enough corroborating information to support probable cause.

Specifically, the Government points to the affidavit's description of the informant as "reliable," suggesting that the affiant knew his identity and reducing the likelihood that the informant was lying. The Government further suggests that a fact included in the affidavit provided by the informant -- that the defendant had stopped working as a landscaper to engage in full-time marijuana production and that he was growing a new crop of plants and storing leftover marijuana for an autumn harvest -- was a "self-verifying detail" that is sufficiently specific that it was likely obtained from personal observations or from a person's statement to the informant that was against his penal interest. See United States v. Zayas-Díaz, 95 F.3d 105, 111 (1st Cir. 1996) (self-authenticating statements may support a probable cause determination). As corroboration for the informant's statements, the Government points to the following: records obtained from Unitil and the Department of Motor Vehicles ("DMV") confirming that Gifford resided at 46 South Road; a police report of a local police department visit to Gifford's home where the officer smelled burnt marijuana on his person and inside the house; and Unitil electricity records of Gifford's home indicating that electrical usage therein was three times the rate of the similarly-sized house at 51 South Road.

We are not convinced by the Government's arguments. First, we do not agree that the information in the affidavit would allow an issuing judge a sufficient basis for determining the informant's reliability. While the factors enumerated in <u>Tiem Trinh</u> are non-exhaustive, it nevertheless remains the case that none of them would favor a reliability finding. Nothing in the affidavit indicates the informant's basis of knowledge, for example, on whether the informant just happened to view the grow operation, heard about it as hearsay, or had direct, first-hand knowledge of the grow operation in the Gifford home. <u>See</u>, <u>e.g.</u>, <u>Greenburg</u>, 410 F.3d at 67 ("A specific, first-hand account of possible criminal activity is a hallmark of a credible tip."). Additionally, the affiant makes no mention of any past history with the informant to establish that informant's credibility. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Barnes</u>, 492 F.3d 33, 37 (1st Cir. 2007) (finding "ample additional evidence" to support a confidential informant's reliability where that informant had supplied information leading to many past arrests). Nor does the affidavit indicate how the affiant came to establish a relationship with the informant. <u>See</u>, <u>e.g.</u>, <u>Barnard</u>, 299 F.3d at 93 (crediting the reliability of an anonymous tipster where he "was known to the police and could be held responsible if his assertions proved inaccurate or false").

-14-

While the Government offers the informant's statements regarding the contemporaneous state of the marijuana grow as well as the autumn grow as self-authenticating, without any statements as to the informant's basis of knowledge, there is no means of determining whether that information was obtained first-hand or through rumor. The information is not so specific and specialized that it could only be known to a person with inside information. Further, information about Gifford's former and current occupation are not so self-verifying to establish the reliability of the informant.

We also agree with the district court that the informant's factual statements were not sufficiently corroborated. There was no independent police surveillance of the Gifford home or marijuana grow operation that could enhance the reliability of the informant's tip. See, e.g., Tiem Trinh, 665 F.3d at 11-12 (reliability of informant's tip sufficiently corroborated where surveillance units made own observations of the targeted premises, watched the premises to track the entry and exit of the informant and the defendant, and monitored the defendant's movements as well as intercepted phone conversations). The DMV record, while confirming that Gifford resided at 46 South Road, does not provide any corroboration for the grow operation. The police report indicating that an odor of burnt marijuana was detected inside the Gifford home and on Gifford's person, while suggestive of marijuana

use, provides only little information that tends to corroborate the tip. The statement is undated, and there is nothing beyond it to corroborate a link between marijuana use and the existence of a marijuana grow operation inside the home.

Beyond the above information, we are left with the electricity records of the Gifford home. Given the very limited corroboration provided by the non-electricity-related information contained in the affidavit, and viewing the totality of the circumstances included therein, we find that the information regarding the size of the comparator home at 34 South Road as well as the information pertaining to the horse boarding business was material. Both omitted facts require that we alter in significant ways the weight we give to the electrical usage information contained in the affidavit. They were thus necessary to the issuing judge's probable cause determination based on that affidavit. See Franks, 438 U.S. at 171. We also agree with the district court that the information was recklessly omitted. The Government stipulated to the affiant's knowledge of the smaller size of the comparator home at 34 South Road, as well as to the existence of a horse boarding business on the premises. Given the import of this information in allowing a court to evaluate whether electrical usage in the target home was suspiciously high, the affiant was reckless in not including it. Since the omitted information was critical to the probable cause determination, we

may infer recklessness.  <u>Burke</u>, 405 F.3d at 81-82 (citing <u>Golino</u> v. <u>New Haven</u>, 950 F.2d 864, 871 (2d Cir. 1991)).

**B.  Sufficiency of Reformed Search Warrant Affidavit**

We also find that the omitted information, when included back into the affidavit, does not sufficiently establish probable cause.  The electrical records for 34 South Road, indicating one-third the electrical usage of the target home, fail as an adequate comparator to provide any useful information regarding whether the electrical usage corroborates the informant's tip.  The house on 34 South Road was a mobile home with only 1,392 square feet of heated space while the target house was a three-bedroom home with a basement and attic, with total square footage of 5,372 square feet. This square-footage differential alone is enough to doubt whether the electrical usage at 46 South Road is revealing of a suspiciously high amount of electricity consumption.  While the electrical usage of the similarly-sized home at 51 South Road is more corroborative of suspiciously high use, it fails to account for other circumstances that might explain differential use, including information that the Government has stipulated the affiant knew, namely,  that a horse boarding business was operating from the premises.

While the affidavit does include some information about the affiant's assessment of the probable significance of the information based on his professional standpoint, experience, and

expertise, the nature of the information provided is very generic: it involves primarily a general discussion of what marijuana grow operations entail that could be placed in any marijuana grow affidavit. It does not directly touch on or evaluate the informant's tip on the basis of the affiant's general knowledge of growth operations. See, e.g., United States v. Khounsavanh, 113 F.3d 279, 284 (1st Cir. 1997) (stating that, "[i]n analyzing whether there is sufficient corroboration, in verifying the reliability of the informant or in demonstrating an adequate basis of knowledge, it is not particularly probative for the informant to supply a lot of details about irrelevant facts that other people could easily know about and that are not incriminating"). On the contrary, if anything, the general discussion goes towards corroborating the affiant's assessment of the variances in electrical usage between the residences at 46 and 51 South Road, not towards corroborating the information provided by the informant per se.

Therefore, viewing the information in the reformed affidavit in its totality, all we have is an informant's tip that lacks any information regarding basis of knowledge, and is corroborated almost exclusively by the following: (1) DMV records listing the residence as Gifford's; (2) information about electrical usage from only one comparator home that is revealing of little as noted above, and (3) an undated police report providing

-18-

information about an odor in the Gifford home and on his person of burnt marijuana. Taken together, we do not find that the information provided sufficiently supports a probable cause finding.

### III.  Conclusion

For all of the above-cited reasons, we agree with the district court's decision to grant Gifford's motion to suppress. We accordingly affirm.