# United States Court of Appeals
## For the First Circuit

No. 15-1869

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN FLEURY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise Jefferson Casper, U.S. District Judge]

Before

Torruella, Lipez, and Barron,
Circuit Judges.

Christine DeMaso, Assistant Federal Public Defender, Federal
Public Defender Office, was on brief, for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with
whom Carmen M. Ortiz, United States Attorney, was on brief, for
appellee.

December 2, 2016

**TORRUELLA**, **Circuit Judge**.   John Fleury appeals the United States District Court for the District of Massachusetts's denial of his motion to suppress the fruits of a search conducted at his residence:  a pistol and ammunition.  Fleury was charged with one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).  After the district court denied his motion to suppress, Fleury pleaded guilty, reserving his right to challenge the denial of his motion to suppress.   Fleury argues that the affidavit submitted by Special Agent Eric Kotchian of the Bureau of Alcohol, Tobacco, and Firearms (the "ATF") supporting an application for a warrant to search his house was misleading because (1) the affidavit overstated a confidential informant's (the "CI") record of providing information to the police; (2) it misrepresented the CI's drug use; and (3) it did not include information suggesting that Fleury might move the gun from his residence.

Although aspects of the affidavit are troubling, because the affidavit contained information from a recording that supported probable cause without relying on information provided by the CI, we affirm.

# I.  BACKGROUND

## A.  Factual Background

On February 4, 2014, the Peabody Police Department responded to the report of a home invasion in Peabody, Massachusetts.  Agent Kotchian also responded to the scene.  The residents reported that the intruders had stolen a Ruger 9mm-caliber handgun and a diamond ring, and the Peabody Police Department requested Agent Kotchian's assistance with the investigation of the home invasion.

During the investigation, the Peabody Police Department obtained surveillance footage showing a male individual believed to be responsible for the home invasion, and officers distributed images from the footage to local media outlets.  In March of 2014, the Peabody Police Department received information from an anonymous tipster identifying the male in the images as the CI.  After further investigation, the Peabody Police Department obtained a search warrant for the CI's residence, and during the search, the CI agreed to work as an informant, telling officers, including Agent Kotchian, that he was aware of a murder-for-hire plot and knew a drug dealer that he could set up.

On April 8, 2014, Agent Kotchian and a Peabody detective met with the CI.  At the meeting, the CI admitted that he participated in the home invasion along with three other people:

Joseph LaFratta, Richard Kenney, and Fleury.  The CI provided officers with information about each of the other three participants.  Following the interview, officers independently corroborated information about Fleury, including contact information, his place of residence, the fact that Fleury had recently been arrested, and the circumstances surrounding his arrest.  The CI also identified a photo of Fleury.

Officers also corroborated information that the CI provided about the Peabody home invasion, including that a handgun had been stolen, that the Peabody home had a keypad on the front door and several locks on the rear door, and the location of the jacket the CI had worn during the home invasion, which Agent Kotchian subsequently found in a search.  Finally, the CI gave Agent Kotchian information about a potential murder-for-hire plot, and Agent Kotchian was able to confirm some of the information.

In addition to providing information, the CI wore a recording device at two meetings with other participants in the home invasion.  One of those meetings, on April 21, 2014, included Fleury and LaFratta.  During that meeting, Fleury argued on the phone with a person Fleury identified as his girlfriend, who lived with him.  After one call, Fleury stated:  "The fucking gun's in the house brother, but there's no clip, I took the clip out last time and left it there. . . . [I]t's kinda hidden, . . . last time

-4-

I left, I left on the bike . . . . So I took the clip out, I just took that . . . ." To which LaFratta replied: "Why do you even have that there? Get that out of there . . . ." Following Fleury's arguments with his girlfriend, the CI warned Fleury to "go away for a couple of days" or to "stay at my house," and Fleury discussed staying at his mother's place, and he moved a painting and his bike from his residence.

The April 21, 2014 recording also recorded the CI discussing drugs. In it, the CI stated that he had "been struggling to get clean," had "used three times in the past three weeks," and that he was "going to do this bump." In addition, the CI had told Agent Kotchian on multiple occasions that he was "using Suboxone that he was obtaining from people on the street."[1]

On May 6, 2014, the CI reported that he had met with Fleury on April 25, 2014, and that Fleury had removed a pistol from a closet in Fleury's residence and put it into a shoulder holster that Fleury was wearing.

On May 9, 2014, Agent Kotchian applied for a search warrant for Fleury's house, seeking "firearms, ammunition, documents and other evidence." Agent Kotchian submitted an affidavit in support of the application. In the affidavit, Agent

---

[1] Suboxone is a prescription medication that is used to block the effect of withdrawal from opiate addiction.

Kotchian made the following averments concerning the CI's reliability:

> The CI has provided accurate, truthful, and reliable information to law enforcement personnel in the past. Information provided by the CI has led to the seizure of evidence. The CI has provided information during this investigation, which has been corroborated by law enforcement officers via further investigation and the use of investigative techniques, such as the use of electronic surveillance, while the CI has met with identified suspects, including FLEURY.

Agent Kotchian also made averments concerning the CI's drug use and criminal history:

> The CI has a criminal history that includes convictions for violations of the law that include, but are not limited to, the following: Breaking & Entering in the Nighttime, Open and Gross Lewdness, Larceny Over $250.00 and Assault & Battery with a Dangerous Weapon. The CI told me that he/she has both used and sold illegal drugs in the past.

The affidavit then summarized (1) information concerning the CI's April 25, 2014 meeting at Fleury's residence, in which Fleury removed a pistol from his closet and put it into "a shoulder holster worn by Fleury," and (2) evidence obtained from the CI's recording of his April 21, 2014 meeting with Fleury and LaFratta, including quoting the following excerpt:

FLEURY:    "Oh, shit."

CI:        "What?"

FLEURY:    "The fucking gun is in the house. But there's no clip. I took the clip out last time and left it (the gun) there. Ah, she

-6-

```
                    might . . . (Unintelligible)[.]  My prints
                    are all over it.  Oh . . . ."

    OTHER IND:      "Would she be smart enough to pick it up
                    with a towel?

    FLEURY:         "No.  She can't pick it up.  It's kind of
                    hidden, but . . . .  See, the last time I
                    left, I left on the bike.  When you were
                    supposed . . . So, I took the clip out and
                    just took that (the clip).  That way she
                    can't do nothing with it.  You know what I
                    mean?  And I just . . . I left it (the
                    clip) at my buddy's.
```

Finally, Agent Kotchian averred, "based on [his] training and experience as an ATF Special Agent," that persons who have had a firearm in their residence over the course of several weeks are likely to still have the firearm in their residence after two weeks.

Agent Kotchian's affidavit did not quote LaFratta's recorded admonishment to Fleury on April 21, 2014:  "Why do you even have that [gun] there?  Get that out of there . . . ."  Nor did it explain that the CI did not report his April 25, 2015 meeting with Fleury until May 6, 2014.  It also did not include information about the CI's drug use during the investigation or some of his prior convictions, including identity theft and credit-card fraud convictions in 2004.  Finally, the affidavit did not state that the CI first had contact with officers just one month before Agent Kotchian drafted the application.

**B.    Procedural History**

On May 9, 2014, a magistrate judge authorized a warrant to search Fleury's residence in Lynn, Massachusetts based on Agent Kotchian's affidavit.  Officers executed the search warrant on May 12, 2014.  They discovered a Walther Model PPK/S .380 caliber pistol, a shoulder holster, and other potential evidence.  Fleury was indicted on June 19, 2014 of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Fleury filed a motion to suppress the fruits of the search and for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).  The district court denied the motion in a written opinion entered February 11, 2015.  On March 19, 2015, after discovery related to the affidavit, Fleury renewed his motion to suppress.  The district court held a three-day Franks hearing, and on April 27, 2015, the district court orally denied Fleury's renewed motion to suppress.  Following the district court's denial of his motion to suppress, Fleury entered a conditional guilty plea, reserving his right to appeal the denial of his motion to suppress.  The district court sentenced Fleury to fifty-five months' imprisonment.

## II.  ANALYSIS

We review probable cause determinations de novo.  United States v. McLellan, 792 F.3d 200, 208 (1st Cir. 2015).  In

conducting this review, "[o]ur task, like that of the magistrate judge and district court, is simply to make a practical, common-sense decision whether, given all the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. (ellipsis and internal quotation marks omitted) (quoting United States v. Brunette, 256 F.3d 14, 16 (1st Cir. 2001)). We review the district court's antecedent factual findings for clear error. United States v. Lanza-Vázquez, 799 F.3d 134, 141 (1st Cir. 2015).

"[A]n affidavit supporting a search warrant is presumptively valid." McLellan, 792 F.3d at 208 (quoting United States v. Gifford, 727 F.3d 92, 98 (1st Cir. 2013)). To rebut the presumption, Fleury must show by a preponderance of the evidence that (1) Agent Kotchian made a false statement or omission "knowingly and intentionally or with reckless disregard for the truth," in his affidavit, id., and (2) the affidavit would be insufficient to establish probable cause without any false statement(s) and with any omitted statement(s). United States v. Rigaud, 684 F.3d 169, 173 (1st Cir. 2012). There is probable cause if the affidavit, as reformed if necessary, shows "a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Tanguay, 787 F.3d 44, 50 (1st Cir. 2015).

-9-

Although literally true, Agent Kotchian's affidavit was misleading because he omitted material information. He used stock phrases, such as "provided . . . information to law enforcement personnel in the past" that "led to the seizure of evidence," that imply the CI had a long relationship with law enforcement that had led to evidence against others in multiple cases. In fact, Agent Kotchian was aware that the CI had no history as an informant prior to his work with Agent Kotchian following the home invasion. The CI's actions in the one month following the home invasion may have convinced Agent Kotchian that the CI could provide reliable information, but Agent Kotchian needed to accurately describe the CI's actions so that the magistrate could form his own opinion. See Illinois v. Gates, 462 U.S. 213, 240 (1983) ("The essential protection of the warrant requirement of the Fourth Amendment . . . is in requiring that the usual inferences which reasonable men draw from evidence be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." (brackets omitted)).

Agent Kotchian also averred that the CI had "used . . . illegal drugs in the past." But Agent Kotchian had strong evidence, from the April 21, 2014 recording, that the CI used drugs during that meeting and was struggling to stay off drugs, and he

-10-

knew that the CI was buying a prescription drug "on the street." Again, Agent Kotchian's affidavit did not disclose information that the magistrate needed to effectively judge the CI's credibility behind a stock phrase that is literally true, but misleading when given a "common-sense" interpretation. See United States v. Jewell, 60 F.3d 20, 22 (1st Cir. 1995) ("The affidavit is to be interpreted in a common-sense rather than a hypothetical or hypertechnical manner.").

We need not decide, however, whether Agent Kotchian acted intentionally or recklessly in omitting information from the affidavit. Fleury's statement in the April 21, 2014 recording that he had a gun at his residence was sufficient to establish probable cause, at least in conjunction with Agent Kotchian's averment that persons who recently had a firearm in their residence over the course of several weeks are likely to still have the firearm in their residence after two weeks. Any value added by information that the CI provided, including the CI's account of his April 25, 2014 meeting with Fleury, was merely cumulative. Fleury's complaints -- with one exception discussed below -- go to the CI's credibility, but the April 21, 2014 recording's probative value did not rely on the CI's credibility.

Fleury argues that the affidavit also omitted information tending to show that Fleury had an incentive to move

the gun from his residence. Fleury points to the troubled relationship with his girlfriend, which is evident throughout the April 21, 2014 recording, and argues that the record shows that Fleury was concerned that she would report the gun to the police. Fleury also refers to LaFratta's statement that Fleury should move the gun, the CI's suggestion that Fleury should stay with the CI, Fleury's discussion about staying with his mother, and the fact that Fleury moved a painting and his bicycle to his mother's house. Simply put, Fleury argues that, by May 9, 2014, when Agent Kotchian sought the search warrant, the information recorded at the April 21, 2014 meeting was stale.

We disagree. Fleury did discuss staying with either his mother or the CI, but neither indicated that Fleury could or should bring the gun. LaFratta told Fleury to move the gun, but Fleury himself never indicated that he had or would move the gun, either in this part of the recording or in any other.

Even taking into account the information showing that Fleury was fighting with his girlfriend and might stay somewhere other than their joint residence, there was "sound reason to believe" that a search of Fleury's residence would result in evidence that he possessed a gun. See McLellan, 792 F.3d at 209. "Probability is the touchstone" of probable cause. Id. It exists where "a man of reasonable caution" would believe "that an offense

-12-

has been or is being committed and that evidence bearing on that offense will be found in the place to be searched." United States v. Clark, 685 F.3d 72, 75 (1st Cir. 2012) (quoting Safford Unified Sch. Dist. No. 1 v. Redding, 557 U.S. 364, 370 (2009)). Here, Fleury's recorded statements that he had a gun at his residence established probable cause.

## III.  CONCLUSION

For the foregoing reasons, the district court's denial of Fleury's motion to suppress is affirmed.

**Affirmed.**