# United States Court of Appeals
## For the First Circuit

No. 24-1386

UNITED STATES,

Appellee,

v.

MICHAEL FRANCIS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Montecalvo, Lynch, and Kayatta,
Circuit Judges.

Richard Guerriero, with whom Oliver Bloom and Lothstein
Guerriero, PLLC were on brief, for appellant.
Aaron G. Gingrande, Assistant United States Attorney, with
whom John J. McCormack, United States Attorney, was on brief, for
appellee.

March 24, 2025

**LYNCH**, <u>**Circuit Judge**</u>.  Michael Francis appeals from the district court's denial of his motion to suppress evidence seized from a search of his car pursuant to a search warrant.  The evidence seized was a firearm holster, a kilogram of cocaine, two cell phones, $10,000 in cash, and a black bandana purported to be gang paraphernalia.  Francis pled guilty to possession with intent to distribute cocaine and reserved his right to appeal the denial of his motion to suppress this evidence.

After an evidentiary hearing, the district court held that the warrant was supported by probable cause.  As to claims the supporting affidavit omitted information in violation of <u>Franks</u> v. <u>Delaware</u>, 438 U.S. 154 (1978), the court held the affidavit by the FBI agent in support of the warrant had not recklessly or in bad faith omitted information allegedly going to the veracity of a cooperating witness.  The court also held that, had the omitted information been included in the affidavit, it would not have vitiated probable cause in support of the warrant. We affirm.

## I.

### A. The Search Warrant Affidavit

Francis is a member of the Gangster Disciples criminal street gang in Manchester, New Hampshire, and was an active state parolee at the time of the underlying events.

Based on the application and affidavit filed by FBI Special Agent Ryan Burke, a federal magistrate judge on August 25, 2021, in New Hampshire, found probable cause and issued a search warrant for Francis's car. Agent Burke's affidavit stated that he had worked as an FBI Special Agent since October 2012, during which time he led and was involved with investigations of drug distribution and had "handled many cooperating sources and witnesses." He was "familiar with the modus operandi used by individuals engaged in the violation of" controlled substances laws.

Agent Burke's affidavit set forth information provided to the Manchester, New Hampshire Police Department (MPD) by a cooperating witness[1] (CW) during his post-arrest interview, after he was given his Miranda warnings. As the district court summarized:

> The witness had been arrested on warrants relating to two prior motor vehicle stops (on June 13, 2021, and July 30, 2021), both of which led to the seizure of a large amount of drugs. During his August 19, 2021, interview, the CW admitted to possessing the drugs seized during the June and July motor vehicle stops, and admitted that he intended to distribute those drugs. He also provided significant information about his drug suppliers.

---

[1] Though both parties refer in their briefs to this individual as an "informant," we use the term "cooperating witness" rather than "informant." The individual was not a government-paid confidential informant, and the MPD obtained the information from the CW in the normal course of his post-arrest interview.

The CW reported that the drugs seized during the June 13 stop were provided to him by Ryan Call, a member of the Gangster Disciples whom the CW had met in prison, and with whom he had maintained a relationship. The CW said that Call informed him that the drugs came from Michael Francis, another Gangster Disciples member. After Call was arrested in the early part of July, 2021, the CW said he was contacted by Francis, who told the CW that he, Francis, would be his supplier going forward. The drugs recovered during the July 30 motor vehicle stop had been provided by Francis, said the CW.

In his post-arrest interview, the CW detailed the price and quantity of drugs he received regularly from Francis, and described the locations where those drug transactions took place. One location, according to the CW, was near Rimmon Street and Putnam Street, in Manchester, close to where the witness believed Francis lived. The CW said that Francis met with him personally to conduct the transactions. He described in detail the vehicle Francis drove (a Honda Accord), and reported that Francis routinely kept a pistol between the driver's seat and center console of the vehicle.

The affidavit described how law enforcement corroborated the CW's information. The officers confirmed that, as the CW said, his initial supplier Ryan Call was a member of the Gangster Disciples, like Francis. The officers confirmed that Call had been arrested in early July 2021, was incarcerated, and so no longer could supply drugs to the CW. Records checks and surveillance corroborated the CW's description that Francis's car was a "newer" "white Honda Accord" with "greyish," "20s"[2] rims and "permanent plates" from New Hampshire and that Francis was

---

[2] Agent Burke explained in his Franks hearing testimony that "20" is a type of car rim.

associated with an address close to where the CW stated his drug transactions with Francis took place.

Agent Burke stated in his affidavit that he had not "set forth every detail [he] or other law enforcement officers kn[e]w about this investigation but ha[d] set forth facts that [he] believe[d] [we]re sufficient to evaluate probable cause as it relate[d] to the issuance of the requested warrant."

On September 1, 2021, MPD conducted surveillance at the address associated with Francis and observed him leave in the car described in the search warrant. MPD followed Francis to a bank, where his car was seized pursuant to the warrant, towed to MPD headquarters, and searched. The fruits of that search are at issue in this appeal. Francis was arrested and federally indicted on five counts, relevantly including possession with intent to distribute 500 grams or more of cocaine under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii).

## B. Francis's Motion to Suppress Based on Allegations at Issue

Francis filed the motion to suppress on September 27, 2022. Francis argued that: (1) the magistrate's issuance of the search warrant was not supported by probable cause; (2) Agent Burke had recklessly failed to disclose in his affidavit material information to the court, particularly "that the CW ha[d] a prior conviction for falsifying physical evidence -- a felony crime of dishonesty"; (3) the affidavit, reformed to include this omission,

- 5 -

further failed to establish probable cause; and (4) the United States v. Leon, 468 U.S. 897 (1984), good faith exception did not apply. From this, he argued for a Franks hearing and exclusion of the evidence. The government opposed, arguing that Francis did not meet the standards for exclusion or for a Franks hearing because: (1) the issuance of the search warrant was supported by probable cause; (2) the omission from Agent Burke's affidavit, which pertained to the CW's conviction for "conceal[ing] what appeared to be drugs by dropping them to the ground and stepping on them in order to impair their availability [in a simple drug possession investigation]" was not either intended to mislead or reckless; (3) the omission did not undercut probable cause; and (4) even if the magistrate's probable cause determination was in error, the Leon good faith exception applied.

Following additional discovery from the government, Francis supplemented his motion to suppress, alleging a second omission from Agent Burke's affidavit: that "two of the officers who conducted the motor vehicle stops of the [CW] were careful to note in their reports that the [CW] was being dishonest with law enforcement" in an attempt to exonerate himself on the spot. These officers "said the [CW] was 'deceptive,' 'not telling me the truth,' and 'attempting to provide deceitful answers.'" The government also opposed this additional argument.

- 6 -

## C. The <u>Franks</u> Hearing and Denial of the Motion

The court held a <u>Franks</u> hearing on June 14 and July 12, 2023, at which Agent Burke testified.  Agent Burke testified that he knew the CW had a state law conviction for falsifying physical evidence and decided not to include it:

> He's -- he wasn't an informant.  He hasn't been an informant for the FBI.  It's been my understanding and my practice that when we're referring to some individual providing information in an affidavit and that person's described anonymously that as a means to permit the magistrate who's evaluating probable cause and, you know, the credibility of that individual's statement, in lieu of their name and full identification, we'll provide a summary of their background, criminal history, any other information they provided that we've been able to evaluate ourselves.
>
> And in this case, because he -- he was simply an individual that was arrested and we conducted a Mirandized postarrest interview, he wasn't someone that we -- I viewed it [sic] as an informant.  I've referred to him as [sic] true name in my report and the affidavit and because of that, I -- I just didn't feel at the time that it was required I include a criminal history.

He testified that he found the CW's information to be "completely credible" because the CW "faced substantial exposure . . . were his case to be adopted federally" and "because of the details of the information [the CW] provided."  He further explained that though a conviction that required "a purpose to deceive law enforcement . . . would be pretty important in assessing [an individual's] credibility," the CW's conviction for falsifying physical evidence "wasn't enough for [Agent Burke] to dismiss the

- 7 -

other indications of [the CW's] credibility that [the CW] provided in the interview."

As to the second omission, Agent Burke testified that the statements in the police report

> were [the other officers'] opinions. Again, I don't recall reading those words back then when I wrote the affidavit, although surely I must have read the report in its entirety, but I know that virtually everyone is deceptive to an extent when they're pulled over by the police. It's a stressful situation, so it didn't -- it wouldn't have impacted my assessment of the [CW]'s statement to me when I interviewed him.

He added that "if someone's being deceptive to law enforcement on a car stop precluded them from providing honest information to me, then I don't think I could probably interview anyone in this courtroom or elsewhere." Indeed, Agent Burke testified that if he had not found the cooperating witness's information to be credible, he "wouldn't have wr[itten] it in an affidavit and put [his] name on it."

On October 3, 2023, the district court denied Francis's motion to suppress in a twenty-three-page ruling. It rejected the challenge to the magistrate judge's finding of probable cause in issuing the warrant. It held the affidavit was facially sufficient to establish probable cause for the reasons it had articulated at the hearing. At the hearing, the court reasoned that the affidavit was "absolutely solid." In its motion to suppress ruling, the court explained that "[t]he CW [wa]s identified by name," "plainly

implicate[d] himself in the offenses described," provided the information "while in custody," and, as the CW was already facing serious charges, he risked further liability if he provided false information. "The information provided by the CW was detailed and comprehensive," and "law enforcement corroborated several aspects of the information provided by the CW." Further, "Special Agent Burke, a ten-year veteran of the FBI, assessed the significance of the information provided by the CW based on his own professional experience, skill, and knowledge."

The court rejected on two independent grounds Francis's argument that nonetheless suppression was warranted under <u>Franks</u> based on omissions in Agent Burke's affidavit. First, the court rejected the argument that the alleged omissions were intentional or reckless. Based in part on its credibility findings from the <u>Franks</u> hearing, "[t]he court fully credit[ed] Special Agent [Burke]'s testimony" and found "[t]here [wa]s no evidence suggesting that Burke harbored any doubts at all -- let alone serious doubts -- about the veracity of the affidavit, or that he thought that either of the omitted facts were significant in assessing probable cause." Second, the omitted information would not "have so significantly diminished the CW's credibility that the magistrate judge's probable cause determination would have been different."

## II.

The Fourth Amendment generally "requires police officers to secure a search warrant supported by probable cause prior to effecting a search or seizure." United States v. Gifford, 727 F.3d 92, 98 (1st Cir. 2013). "Probable cause exists when the totality of the circumstances suggests that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. (quoting United States v. Hicks, 575 F.3d 130, 136 (1st Cir. 2009)). "[T]he probable cause standard is not a high bar." United States v. Cortez, 108 F.4th 1, 8 (1st Cir. 2024) (alteration in original) (quoting United States v. Sheehan, 70 F.4th 36, 44 (1st Cir. 2023)). It is a "practical, common-sense decision." United States v. Tanguay, 787 F.3d 44, 50 (1st Cir. 2015) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

An affidavit in support of a search warrant is "presumptively valid." Gifford, 727 F.3d at 98. "In the absence of a reckless omission, a search warrant is reviewed with deference to the issuing magistrate . . . ." Id. at 99. Only if allegations of reckless omission "prove to be true" do we "owe no deference to the magistrate's decision." Id. "We review a district court's

- 10 -

legal conclusion that a given set of facts constituted probable cause de novo . . . ." Id.

To lodge a successful Franks challenge based on the alleged omissions, Francis must show, by a preponderance of the evidence, that (1) "the omission[s] [were] either intentional or reckless" and (2) "the omitted information, if incorporated into the affidavit, [was] sufficient to vitiate probable cause." Tanguay, 787 F.3d at 49; see also United States v. Tzannos, 460 F.3d 128, 136 (1st Cir. 2006).

We review "factual findings made by [the] district court in connection with [the] Franks hearing" for clear error. Tzannos, 460 F.3d at 136. "[W]e are 'especially deferential to the district court's credibility judgments,'" which we are not free to disturb "absent objective evidence that contradicts a witness's story or a situation where the story itself is so internally inconsistent or implausible that no reasonable factfinder would credit it." United States v. Guzmán-Batista, 783 F.3d 930, 937 (1st Cir. 2015) (quoting United States v. Henderson, 463 F.3d 27, 32 (1st Cir. 2006)).

Francis's appeal makes multiple claims of error, starting with the argument that the affidavit itself failed to establish probable cause on its face in that it did not establish probable veracity of the CW or the basis of the CW's knowledge, much less the CW's firsthand knowledge, and that the corroboration

was only of innocent facts, not of criminal conduct. Francis also challenges the district court's findings of no Franks error. As his counsel stated at oral argument, Francis relies more heavily on his Franks-based argument that the court erred in finding that Agent Burke's omissions were not reckless or knowing.

He purports to base his arguments on three principles: (1) corroboration of innocent details from an informant is insufficient to establish probable cause; (2) while it is commonplace for an informant to have a criminal record, it is inherently different when that criminal record is for a felony crime of dishonesty; and (3) when law enforcement recklessly excludes such information, the good faith exception cannot apply.

Francis does not assert the district court used the wrong legal standards for assessing whether the initial issuance by the magistrate judge of the warrant was in error. The court extensively discussed the application of those standards to the facts of this case, correctly citing to United States v. Tiem Trinh, 665 F.3d 1 (1st Cir. 2011) and United States v. Tanguay, 787 F.3d at 44. Francis has shown no error of law or application of law to the facts of this case. Because we hold that the affidavit established probable cause on its face, we need not

address Francis's arguments regarding the <u>Leon</u> good-faith exception.

Francis argues that the affidavit failed to establish probable cause because "law enforcement merely corroborated publicly available, innocuous information" rather than "criminal conduct." This court has previously rejected such an argument. <u>See</u> <u>Tiem Trinh</u>, 665 F.3d at 12 ("[C]ase law makes clear that 'corroboration of even innocent activity reported in the tip may support a finding of probable cause . . . .'" (quoting <u>United States</u> v. <u>Perez</u>, 67 F.3d 1371, 1383 (9th Cir. 1995), <u>rev'd en banc on other grounds</u>, 116 F.3d 840 (9th Cir. 1997))); <u>see also</u> <u>Gates</u>, 462 U.S. at 245 ("If the informant had access to accurate information of [defendants' seemingly innocent activities] a magistrate could properly conclude that it was not unlikely that he also had access to reliable information of the [defendants'] alleged illegal activities.").

Francis makes another argument that the CW was not trustworthy because he was facing pending criminal charges and "looking for a way to avoid or mitigate criminal liability," citing a legal treatise in support. <u>See</u> 2 Wayne R. LaFave, <u>Search and Seizure: A Treatise on the Fourth Amendment</u> § 3.3(c) (6th ed. 2024). From this he argues that the affidavit failed to establish probable veracity of the CW. The argument is not correct. "To be sure, factors like an informant's . . . desire to advantage

himself with respect to pending criminal charges are to be considered in evaluating his reliability. But such considerations are not dispositive." United States v. Brown, 500 F.3d 48, 55 (1st Cir. 2007). The totality of the circumstances supports the CW's probable veracity. The CW risked further liability if he provided false information. See Tiem Trinh, 665 F.3d at 11 (considering, in examining affidavit's probable cause showing, that the individual upon whose account the affidavit relied was "known to the police and [could] be held responsible if his assertions prove[d] inaccurate or false" and provided "extensive, detailed information" (quoting United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002))).

Francis also argues that this court in Gifford found an affidavit "with more detail than provided by Agent Burke's informant" to be insufficient. Not so. Gifford, by contrast, involved a case where "none of the [Tiem Trinh factors] would favor a reliability finding" because "[n]othing in the affidavit indicate[d] the informant's basis of knowledge" and "the affidavit [did not] indicate how the affiant came to establish a relationship with the informant." Gifford, 727 F.3d at 100.

As to the claim of Franks error based on allegedly false statements by Agent Burke, Francis has not shown that "the affiant 'in fact entertained serious doubts as to the truth' of the allegations." United States v. Ranney, 298 F.3d 74, 78 (1st Cir.

2002) (quoting United States v. Williams, 737 F.2d 594, 602 (7th Cir. 1984)). For a challenge based on omissions, he must show that the omission "[wa]s 'designed to mislead, or . . . made in reckless disregard of whether [it] would mislead, the magistrate' in his appraisal of the affidavit." Tanguay, 787 F.3d at 49 (second alteration in original) (quoting United States v. Colkley, 899 F.2d 297, 301 (4th Cir. 1990)). "Negligent omissions -- even negligent omissions of highly probative information -- do not satisfy this strict standard." Id. Francis has made neither showing.

Agent Burke testified at the Franks hearing that he found the CW's information to be "completely credible." As to the omission of the CW's past conviction, he explained that though it was his practice to include in the affidavit "background" and "criminal history" for anonymous FBI informants, the CW was named in the affidavit and was "an individual that was arrested and [for whom officers] conducted a Mirandized postarrest interview." As to the omission of police report statements that the CW was being deceptive and untruthful after he was pulled over, Agent Burke explained that "virtually everyone is deceptive to an extent when they're pulled over by the police."

The district court found Agent Burke's testimony to be credible. Agent Burke provided explanations that were not "so internally inconsistent or implausible that no reasonable

factfinder would credit it." Guzmán-Batista, 783 F.3d at 937. To the contrary, we conclude his explanations were objectively reasonable as to why he thought such information about the criminal record of the CW did not undercut the credibility or the veracity of his statements about Francis.[3]

Francis's appeal also fails because the district court correctly held that the omissions, had they been included within the affidavit, would not have undercut probable cause. The omitted information does not "given all the circumstances" vitiate probable cause. See Tanguay, 787 F.3d at 50-51 (affirming the district court's conclusion that the affidavit, which relied primarily on information from a tipster, "remain[ed] sufficient to establish probable cause" even when reformed to include the tipster's conviction for uttering a false prescription); United States v. Rumney, 867 F.2d 714, 720 (1st Cir. 1989) ("[The cooperating witness's] credibility was not undercut merely because he made predictable denials until the police could produce evidence linking him to the [crime].").

We **affirm**.

---

[3] Francis also argues, citing Gifford, 727 F.3d at 101, that "recklessness should be inferred where Agent Burke admitted the affidavit for the search warrant depended on the [CW]'s credibility but omitted information about the [CW]'s credibility." (Citation omitted). This argument fails. Gifford inferred recklessness because, unlike here, "the omitted information was critical to the probable cause determination." Id. at 101.